## THE CHICAGO CITY RAILWAY COMPANY

### *v.*

### ELIAS LOWITZ.

*Opinion filed October 24, 1905—Rehearing denied Dec. 6, 1905.*

1. EVIDENCE—*when evidence as to custom in getting off cars is proper.* Evidence of a custom or common practice among passengers to get off of the cars of the defendant at a certain railroad crossing when the cars were stopped there to ascertain whether it was safe to cross the tracks, is proper in an action for injuries received by a passenger thrown to the ground by the sudden starting of the car as he was alighting at such place. (*South Chicago City Railway Co.* v. *Dufresne,* 200 Ill. 456, distinguished.)

2. SAME—*when rules of the defendant company are admissible.* Rules of the defendant street car company requiring cars to be stopped at a certain distance from railroad crossings, requiring the conductor to go ahead to the crossing and providing that the motorman shall have charge of the car during the conductor's absence and shall not start the car until he knows that no person is getting on or off, are admissible upon the question of the degree of care used by the defendant in starting its car when the plaintiff was alighting at a railroad crossing.

3. SAME—*when question is improper as calling for mere opinion.* A question asked of a witness whether it was physically possible, in the night time, for the motorman on the front of a closed car to see anybody getting off the rear platform of the car, calls for a mere opinion, and an objection thereto is properly sustained.

4. SAME—*when the testimony of expert is properly allowed to stand.* Testimony of a properly qualified medical expert, that in an examination made by him of the plaintiff the day he testified he found deformity and abnormal mobility of the hip and "an apparent inability to use it," is properly allowed to stand, where he subsequently testifies, without objection, that he could only form an *opinion* as to the plaintiff's ability to use his limb, as his examination would not reveal that fact one way or the other.

5. INSTRUCTIONS—*when instruction is properly refused as misleading.* An instruction to the effect that the rule read in evidence by the plaintiff's attorney, claimed to be the rule of the defendant relating to the conduct of motormen and conductors at railway crossings, "was not admitted by the court, nor should it be considered by the jury as furnishing a substantive ground of complaint to the plaintiff, and there can be recovery in this case on said rule," is properly refused as misleading.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHAS. A. BISHOP, Judge, presiding.

The Appellate Court has made the following statement of facts in this case as a preface to its opinion deciding the case, to-wit:

"Appellant was engaged in operating an electric line of street railway upon and along Indiana avenue in the city of Chicago. Indiana avenue runs north and south and Fortieth street runs east and west, crossing Indiana avenue at right angles. Running along Fortieth street are steam railroad tracks which cross Indiana avenue at grade. Immediately south of Fortieth street the South Side Elevated railroad runs east and west across Indiana avenue. On the south-east corner of Fortieth street and Indiana avenue there is constructed an entrance and stairway to the elevated structure.

"Appellee claims that, on the evening of October 11, 1899, in company with his two sons and one D. C. Thickston, he visited at the house of a friend on Princeton avenue between Forty-seventh and Forty-eighth streets, and between 10 and 10:30 o'clock they started to return to their homes. They walked to Forty-seventh street and took a car going east on the Forty-seventh street line. Upon arriving at Indiana avenue they transferred to a north-bound car on Indiana avenue. When they reached Fortieth street, the car stopped, as is the custom, before crossing the railroad tracks at Fortieth street, for the purpose of enabling the conductor of the car to go forward and ascertain if it was safe for the street car to pass over the tracks. As soon as the car stopped, the conductor went ahead to see if there was any danger, and, seeing that the way was clear, signaled the motorman to start ahead. The motorman in charge of the car started the car forward, and took it across the railroad tracks.

"Appellee claims that, when he entered the Indiana avenue car, the conductor was informed that they wished to stop on the south side of Fortieth street. When the car stopped, appellee and his son, William, left their seats in the car and went out upon the rear platform of the car. The son stepped off the car safely. Appellee, following closely behind him, had one foot on the step and the other upon the ground in the act of alighting from the car, and the car started, and he was thrown to the ground, receiving the injuries complained of."

The trial below resulted in verdict and judgment in favor of appellee. An appeal was taken to the Appellate Court and the Appellate Court has affirmed the judgment of the trial court. The present appeal is prosecuted from such judgment of affirmance.

WILLIAM J. HYNES, and EDWARD C. HIGGINS, (MASON B. STARRING, of counsel,) for appellant.

WING & WING, (FRANKLIN B. HUSSEY, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The appellant in this case urges three grounds why the judgment of the Appellate Court should be reversed: First, that the trial court erred in its admission of alleged improper evidence against the objections of appellant; second, that the trial court erred in refusing to give to the jury the instruction, hereinafter set forth, in regard to the rule of the appellant company read in evidence upon the trial below by the appellee's attorney; and third, that the appellee was injured through his own act in attempting to leap from the car on the occasion in question, and not by or through any remissness of duty on the part of the appellant. In disposing

of these objections, thus made by appellant to the action of the trial court, the Branch Appellate Court, speaking through Mr. Justice SMITH, delivered an opinion which, with the exception of certain portions thereof, discussing questions of fact not proper to be considered in this court, is as follows:

"It is urged by appellant that improper evidence, prejudicial to appellant, was admitted during the trial at various times.

"Appellee was permitted to introduce evidence to show that it was customary, or a common practice, for people to get off the cars of appellant on the south side of Fortieth street, when such cars came to a stop for the purpose of 'making the crossing,' for the purpose, among others, to take the elevated train at that point. Evidence of this character was elicited on cross-examination of Coley, who at the time of the accident was a conductor in the employ of appellant; and also from Latchman and McFarland, called by appellee in rebuttal. Several witnesses had been called by appellant on this point. At the close of appellant's case and while appellee was putting in his rebuttal, counsel for appellee offered to prove that, at and prior to the time of the accident, it was the custom and a usual thing for passengers to alight on the south side of the tracks and take the elevated and boulevard trains. Thereupon counsel for appellant said: 'I will let counsel prove that fact if he can. I will make no objection to that, to show the sincerity of the offer.' It would seem that whether this line of testimony introduced by appellee was proper rebuttal or not, the objection to it was waived by appellant.

"We do not think the case of *South Chicago City Railway Co.* v. *Dufresne*, 200 Ill. 456, cited by appellant on this objection, is in point. The question there decided was that it was not competent to prove a custom and practice of people to get upon cars, while they were in motion, at a certain crossing of railway tracks. The question decided in that case was very different from the one now before us. The

reasonable practice of stopping the north-bound cars, at the south side of Fortieth street, before attempting to cross the steam railroad tracks for the purpose of ascertaining whether there was any danger in crossing, would have a tendency to induce the practice or custom for passengers to get on and alight from the cars at that point. If that was a fact, then under the rule, laid down in *North Chicago Street Railroad Co.* v. *Kaspers,* 186 Ill. 246, it became appellant's duty to run its cars 'in reference to the practice which it recognized and aided.' We find no reversible error in admitting the evidence.

"Appellant insists that it was error to admit in evidence a part of section 26 of the rules of appellant regarding the duties of motormen and conductors, when about to cross steam railroad crossings, and the bringing of cars to a full stop between fifteen and twenty-five feet from steam railroad crossings, and that the gripman, motorman or driver is responsible for the management of the train or car during the absence of the conductor. We think the rule was admissible to show a practice and custom of stopping the cars at the point of injury, and as tending, with the other evidence in the case, to show negligence in the management of the car. (*Lake Shore and Michigan Southern Railway Co.* v. *Ward,* 135 Ill. 511). It was not competent for the purpose of founding a substantive cause of action upon its breach, but as throwing light upon the question of the degree of care that was exercised by appellant in starting its car while appellee was in the act of alighting from the car. Such a practice and custom, known and relied upon by appellant and its employes and by the public, would necessarily enter into and become a part of the *res gestæ* of the injury complained of. It was held in *St. Louis National Stock Yards* v. *Godfrey,* 198 Ill. 288, where evidence was admitted by the trial court as to the usual manner of conducting the business of appellant and others in appellant's yards, that 'the environment and usual manner of conducting the business involved at the

place of injury is competent as shedding light on the acts and conduct of the parties.' The cases of *North Chicago Street Railroad Co.* v. *Irwin,* 202 Ill. 345, and *Lake Shore and Michigan Southern Railway Co.* v. *Brown,* 123 id. 162, hold to the same general effect that the existence of a custom enters into the consideration of the question of negligence, and that evidence of the custom is proper.

"That part of the rule, which provides that 'in the absence of the conductor, the gripman, motorman or driver is responsible for the management of the train or car;' and that 'before starting, know positively that no person is attempting to get on or off, and indicate to the conductor the passengers, who enter the train or car while the conductor is examining the railroad crossing;' tends to show an admission on the part of appellant that the exercise of due care for the safety of its passengers required the motorman, in the absence of the conductor from the car for the purpose indicated in the rule, to be responsible for the management of the car, and to know positively before starting that no person was attempting to get on or off the car. In this view, as stated in the *Ward case, supra,* the rule was clearly admissible.

"We do not think it was material to cross-examine the witnesses, Aye and Woick, as to their familiarity with the above rule, but it was harmless error. These witnesses had testified to a conclusion rather than a fact as to whether there was a stopping place for letting off passengers near the elevated station on the south side of the railroad tracks. The cars always stopped there and passengers had a right to alight there. The fact that the witnesses were familiar with the rule would not tend to carry the inference to the jury that the failure to observe the rule constituted, in itself, an act of negligence. The question of negligence is one thing. As to whether or not the witnesses were familiar with the rule is an entirely different question, and has no bearing upon the question of negligence. Knowledge of the rule

on the part of these witnesses would neither convict nor excuse appellant for the act in question.

"It is also insisted that the trial court erred in permitting the re-direct examination of the witness, Thickston, as to a conversation with Dr. McCutcheon. We think the door was opened for this examination by the cross-examination of the witness in which fragments of the conversation had been drawn out. Appellee, by the familiar rule, was entitled to the whole conversation.

"The question put to the witness Hagstrom as to whether it was physically possible, in the night time, for the motorman on the front of the car to see anybody getting off the rear platform of a box-car, called for a mere matter of opinion, and the objection to it was properly sustained.

"Appellant complains that Dr. Ferguson, a witness for appellee, was permitted to state that, in an examination of appellee made by him the day he testified, he 'found deformity, and abnormal mobility of the hip, an apparent inability to use it,' the objection being to the last clause of the answer. The witness, before this evidence was given, had testified to the same thing without objection. Subsequently he testified without objection as follows: 'I have seen a limb with the fracture of the neck of the femur where there was non-union, where they were able to use it fairly well, and I have seen others where they could not use it at all. How it is in this case he will have to testify to. I do not know that. I could only form my opinion on that. My examination would not reveal that.' It is clear from this evidence that Dr. Ferguson was giving his opinion in the expression which was objected to. He expressly disclaims any knowledge of the fact, and says that his examination would not reveal the fact one way or the other. He was competent to give an opinion as an expert. The court did not err in allowing the testimony to stand.

"We do not think there was reversible error in allowing the son of appellee, William J. Lowitz, to testify that appel-

lee complained of pain in his left leg.   From the context of
the testimony of this witness it appears that the time referred
to by the witness was somewhere from the time of the acci-
dent to about an hour thereafter, when the witness left his
father's house to go to his brother's home.   It may have been
near enough to the time and place of the accident to make
it a part of the *res gestæ.*   That does not clearly appear from
the record.   But, conceding that the answer was an improper
one, in view of the uncontradicted testimony in the case as
to the character of the injury received by appellee, we do not
think that it was of such prejudicial character that a differ-
ent result would have followed had it been excluded.   (*West
Chicago Street Railroad Co.* v. *Carr,* 170 Ill. 478).

"Appellant requested and the trial court refused to give
to the jury the following instruction:

" 'The jury are instructed that the rule read in evidence
by plaintiff's attorney, claimed to be a rule of the defendant
relating to the conduct of conductors and motormen at rail-
way crossings, was not admitted by the court, nor should it
be considered by the jury, as furnishing a substantive ground
of complaint to the plaintiff, and there can be no recovery in
this case on said rule.'

"In *West Chicago Street Railroad Co.* v. *Petters,* 196
Ill. 298, the court said: 'We think the appellant was not
prejudiced by the refusal of the trial court to give this in-
struction to the jury.   This class of instructions, which select
one item of evidence or one fact disclosed by the evidence
and state that a certain conclusion does not follow as a mat-
ter of law, from that fact, are calculated to mislead and con-
fuse a jury.   *   *   *   If an instruction of this nature were
held proper, it would be possible for a defendant to select
each 'mere fact' constituting the entire chain of facts by
which negligence was proved, and enable the court to in-
struct the jury that each of these links in the chain did not
of itself, constitute negligence, and while each particular
link might not of itself constitute negligence, yet the whole

taken together, would, and thereby the court would be enabled to instruct the jury on the facts, and take away the consideration of facts from them.'

"The instruction, commented upon in the above language, was to the effect that no presumption of negligence arises against the defendant from the mere fact that the plaintiff was injured in connection with defendant's cars. We regard the comments of the court as equally applicable to the refused instruction in this case. One is as correct, in point of law, as the other. The plaintiff in that case could not have made out his case by proving that he was injured in connection with defendant's cars. The plaintiff in this case could not make out his case by proving the rule of the defendant. If this instruction had been given, the jury might easily have concluded that the court meant to tell them that there could be no recovery in the case, based on the act of the motorman in starting up the car, while appellee was in the act of alighting therefrom, without using proper care to ascertain that no passenger was attempting to get on or off the car. Or, to speak more generally, the jury might easily mistake the language of the requested instruction to mean that there could be no recovery, based on the violation of the rule of duty imposed by law upon appellant, which was sought to be enforced by the rule of appellant. We do not think there was error in refusing the instruction.

"It is insisted by appellant that under the evidence, disclosed by the record, appellee was injured through his own act in attempting to alight from the car, and that no remissness of duty in the premises is shown on the part of the appellant. These were questions of fact for the jury under instructions of the court. At the instance of the appellant twenty-seven instructions were given to the jury covering every possible aspect of the case. The evidence, * * * its weight and preponderance were for the jury to determine under the instructions. Appellee was within his legal rights in attempting to alight from the car after it had stopped on

the south side of Fortieth street. (*West Chicago Street Railroad Co.* v. *Manning,* 170 Ill. 417; *Springfield Railway Co.* v. *Hoeffner,* 175 id. 634; *North Chicago Street Railroad Co.* v. *Brown,* 178 id. 187; *Chicago West Division Railway Co.* v. *Mills,* 105 id. 63). * * * The judgment is affirmed."

We concur in the foregoing views, expressed by the Branch Appellate Court, and adopt the same as the opinion of this court in this case. Accordingly, the judgment of the Branch Appellate Court is affirmed.

*Judgment affirmed.*