# Birmingham Railway L. & P. Co. v. Morris.

## Street Railway Crossing Accident.

(Decided May 24, 1909. Rehearing denied June 30, 1909.
50 South. 198.)

1. *Parties; Particular Capacity; Amendment.*—Where the caption of the original complaint described plaintiff as the administrator of the estate of etc., and the body of the complaint stated that plaintiff sued as such administrator and the caption of the count added by amendment described the plaintiff as "N.," administrator, etc.," and the body of the count referred to the actor as plaintiff and otherwise referred to the deceased as plaintiff's intestate, both the original and the amended complaint indicated that the suit was by plaintiff in a representative capacity and hence, the amendment was not objectionable as a departure.

2. *Street Railways; Crossing Track; Complaint.*—Where a count against a street railway for the death of a child while crossing the track asserted that intestate was killed by one of defendant's cars under the control of defendant's servant, and also that her death was caused by defendant's failure to use reasonable care to avoid the injury after discovering the danger, the last recital was a mere

[Birmingham Railway L. & P. Co. v. Morris.]

recital of defendant's ultimate responsibility, and the count was not objectionable as imputing negligence to defendant's servants on one part, and alleging defendant's corporate negligence in another.

3. *Same; Evidence.*—Where one of the material issues was at what distance, under the circumstances present, the motorman of the car which struck the deceased first saw deceased and her companion as they approached the track after leaving the car from which they had alighted, it was competent to show that the car from which intestate alighted was not going very fast at the time of the accident.

3. *Same.*—Evidence of a custom and rule of a railroad company requiring the motorman of cars passing standing cars to ring the gong and bring the passing car to a stop with the front end opposite the rear end of the standing car, was admissible under a count alleging negligence generally not as a standard of the care required, but as evidence of what was considered ordinary prudence under such circumstance, the action being for death of the traveler who had just alighted from the street car, and as she passed behind it onto an adjoining track, was struck by a car traveling in the opposite direction.

5. *Same.*—Under a count alleging negligence of the motorman of the passing car, in failing to stop after having discovered intestate's peril a rule of the carrier requiring cars passing standing cars to sound the gong and stop the front end opposite the rear end of the standing car is not applicable, nor is it applicable to defendant's plea of contributory negligence in answer to such account.

6. *Same; Rules; Construction.*—A rule requiring the gong to be sounded while passing standing cars, and the car brought to a stop with the front end opposite the rear end of the standing car is not limited in application to the passing of cars absolutely at rest, but includes cars that had stopped and had just started to continue their journey, cars from which passengers might have alighted.

7. *Same; Crossing Accident; Care of Motorman.*—Where the action was against a railroad company for the death of the traveler while crossing the track based on negligence after the discovery of peril, the question was whether after discovering intestate's peril, the motorman used all means at his command skillfully and in proper order to avert the injury, thus doing all he could to stop the car.

8. *Same; Instructions.*—Where the only issue submitted was based on a count charging negligence after discovery of peril, a charge asserting that if the jury believed that an experienced motorman might have been able to stop the car sooner, yet, if the motorman in charge of the car did all he could to stop the car after he saw intestate, the jury should find for defendant, might mislead the jury to differentiate between the care required of an experienced motorman and that of the motorman in question, and also eliminated consideration of intestate's peril, and hence, was properly refused.

9. *Same.*—A charge asserting that if the motorman did all he could to stop the car after he saw intestate, the jury could find for the defendant, eliminated the duty of the motorman to warn intestate of her danger and was properly refused.

10. *Evidence; Error; Explanation by Parol.*—Where it appeared that the word "and" was a typographical error for the word "end" in a rule of the defendant, which rule was admissible, parol evidence was competent to explain the error.

11. *Pleading; Issues; Withdrawal of Count; Evidence.*—Where testimony was legally admitted under the issues made by some of the counts then in the complaint, the fact that these counts were subsequently withdrawn, will not put the court in error for having admitted such evidence.

12. *Appeal and Error; Harmless Error; Evidence.*—In an action against an electric railway company for the death of a traveler while crossing the track the admission of evidence of the number of cars operated over the line about the time of the accident is not prejudicial to the defendant, nor was evidence as to the number of people traveling on defendant's cars in certain hours prejudicial to it.

13. *Same.*—Evidence previously erroneously admitted may be subsequently ruled out and the previous errors cured thereby; so, subsequently allowing questions erroneously excluded previously, cures error.

14. *Discovery; Interrogatories.*—Where plaintiff answered interrogatories submitted by defendant and added certain non responsive matter concerning intestate, plaintiff was entitled to have so much of the answer excluded as was improper, when defendant offered, the answer in evidence.

15. *Charge of Court; Applicability to Pleading.*—Charges not applicable to the issues made by the pleading are properly refused.

16. *Same; Covered by Those Given.*—It is not error to refuse requested written charges substantially covered by written charges given.

17. *Trial; Argument of Counsel; Objection.*—Objection to the arguments of counsel must be taken when the statements are made and may not be raised by requested charges.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Action by W. C. Morris, administrator, against the Birmingham Railway, Light & Power Company for wrongful death of a child on the track. Judgment for plaintiff, and defendant appeals. Affirmed.

The ninth count of the complaint is as follows: "Plaintiff claims of the defendant corporation $35,000 as damages, for that on, to wit, the 20th day of May, 1905, defendant was engaged in the business of a common carrier of passengers for hire in Jefferson county, Ala., and in propelling cars by means of electricity in

[Birmingham Railway L. & P. Co. v. Morris.]

said county and state, and while so engaged as said common carrier defendant's agents and servants in charge of one of its cars, after discovering that plaintiff's intestate was in danger of injury, which danger consisted in being in danger of being run over or killed by a car on defendant's track or railway, which car was under the control and management of defendant's servants or employes and operated by them, and plaintiff's intestate was on defendant's said railroad track crossing the same, and said servants or employes negligently failed then and there to use reasonable and proper care and diligence to avoid injuring said intestate, when the use of said such reasonable care and diligence would have prevented the injury, whereby plaintiff's intestate was then and there injured by one of defendant's street cars striking or running upon her, and her death was caused by a failure of defendant to use reasonable care and diligence to avoid injuring said intestate after discovering her danger of injury, when the use of such reasonable care and diligence would have avoided said intestate's injury; hence this suit." The caption of the complaint is "W. C. Morris, as administrator of the Estate of Evanda Pearson."

The following special charges, requested by the defendant and refused, are deemed necessary to be set out: "(9) I charge you that Mr. Bell's argument that the defendant's employes are poorly paid has no foundation of fact in this case. (10) I charge you that Mr. Bell's argument in this case to the effect that defendant hires new men to run its cars because it is cheaper to do so is improper and unsupported by the evidence. (11) Even though you may believe that an experienced motorman might have been able to stop the car sooner, yet if you believe, from all the evidence in the case, that Busler did all he could to stop the car after he saw plaintiff's

intestate, you must find a verdict in favor of the defendant."

TILLMAN, GRUBB, BRADLEY & MORROW, for appellant. —The amendment constituted a departure since it showed that Morris sued in his individual capacity.—*Bryant v. Southern Ry.,* 137 Ala. 488; *Lowery v. Daniels,* 98 Ala. 451; *Lucas v. Pittman,* 94 Ala. 616. In any event the defendant was entitled to the affirmative charge under the 9th count of the complaint. Its averments are repugnant and inconsistent in that it charges corporate negligence as well as negligence of servants.—*Birmingham Ry., L. & P. Co. v. Glover,* 142 Ala. 492. The other grounds of demurrer assigned to this count raise the propositions of law presented in the following cases,—*L. & N. v. Black,* 89 Ala. 313; *Snyder v. Mobile & R. Co.,* 146 Ala. 344. The court erred in admitting the rule of defendant.—*A. G. S. v. Clark,* 136 Ala. 462. The rule was not admissible on the theory that the plaintiff was not guilty of contributory negligence.—*Bir. Ry., L. & P. Co. v. Oldham,* 141 Ala. 195. The court erred in sustaining objection to the question propounded to the motorman as to whether or not he did all in his power to stop the car after he became aware of the peril.—*Bir. Ry., L. & P. Co. v. Ramsey,* 43 South. 355. There was no testimony tending to support the wanton count, and the court should have given the affirmative charge thereto.—*City D. Co. v. Henry,* 136 Ala. Nothing short of actual knowledge on the part of the motorman of intestate's peril will authorize a recovery under the issues made by the pleadings in this case.—*Bir. R. L. & P. Co. v. Johnson,* 43 South. 33. The same discussion applies to refused charge No. 2. The court erred in refusing charge 5.— *Bir. Ry., L. & P. Co. v. Johnson, supra.* Refused charges 6 and 7 should have been given.—*Bryant v. Southern*

*Ry. Co., supra.* Counsel discuss other assignments of error, but without citation of authority.

ROBERT N. BELL, and FRANK S. WHITE & SONS, for appellee.—The 9th count added by way of amendment did not constitute a departure.—*K. C. M. & B. R. R· Co. v. Matthews,* 142 Ala. 298. The demurrer to the 9th count was not well taken nor was the defendant entitled to the affirmative charge thereon.—*City D. Co. v. Henry,* 139 Ala. 161; *Central of Ga. v. Freeman,* 140 Ala. 581; *Bir. Ry., L. & P. Co. v. Moore,* 43 South. 841; see also 54 L. R. A. 787. There was no repugnancy or inconsistency in its allegation.—*K. C. M. & B. R..R. Co. v. Sanders,* 98 Ala. 293. There was no error in admitting the testimony of Shelby.—*L. & N. R. R. Co. v· Orr,* 121 Ala. 502. The rule was admissible.—*R. & D. R. R. Co. v. Hannon,* 93 Ala. 181; *Helton v. Ala· Mid.,* 97 Ala. 275; *L. & N v. Mothershed,* 97 Ala. 261. If it is negligence for an employe to violate a rule it is also negligence for the employer to do so.—*L. & N. v. Pearson,* 97 Ala. 211; *M. & C. v. Graham,* 94 Ala. 545; *M. & C. v. Askew,* 90 Ala. 5. The rule was admissible as tending to show negligence or degree of care under the circumstances.—184 Mass. 476; 158 Mass. 810; 151 U. S. 209; 158 U. S. 339. The evidence as to the number of cars and the passengers thereon was not prejudicial to the defendant, and hence, will not be reviewed.—*Harmon v. Siler,* 99 Ala. 306; *Hunt v. Johnson,* 96 Ala. 130. The court did not err in excluding the irresponsive answer to the interrogatories.—*Culver v. Ala. Mid.,* 108 Ala. 330; *Pritchett v. Monroe,* 22 Ala. 501. There was no error in overruling question to the motorman as to whether or not he could have stopped the car sooner.—*Tanner v. L. & N.,* 60 Ala. 621. The question as to whether defendant's motorman was guilty of negligence after discovery of peril was a question for

the jury.—*Southern Ry. Co. v. Bush,* 122 Ala. 470; *Bir. R., L. & P. Co. v. Brantley,* 141 Ala. 614. The motorman could not assume that the child would not go on the track.—62 N. E. 658. He should have slackened the speed of the car.—*Government St. Ry. Co. v. Handlin,* 53 Ala. 70.

McCLELLAN, J.—Counts 1, 3, 4, and 7 of the complaint were stricken on demurrer. Counts 2, 5, 6, 8, and 10 were eliminated from the jury's consideration by charges requested by the defendant. The trial was had alone on count 9. The reporter will set out the count.

The plaintiff's intestate was Evanda Pearson. At the time of her death she was 11 years and 5 months of age. She, with a younger sister, had taken a car of the defendant for Cain Station in Avondale on defendant's line, and had been carried by the station. The conductor's attention was called to the fact. The car was stopped about 200 yards beyond the station, and the children permitted to alight. It was raining, and Evanda immediately upon leaving the car raised, or had raised for her, an umbrella. The car from which she and her sister had alighted moved on. As it did so, a train of the defendant going in an opposite direction approached, and the children, evidently oblivious of the fact and of their danger, crossed the track on which the car they had just left had come, crossed the space between that and a parallel on which the other train was moving, and, with the view to crossing it, went upon the latter track. The younger sister, being slightly in front of Evanda, escaped with comparatively slight injuries. Evanda was killed. The ninth count sought to charge the defendant with responsibility for intestate's death upon the theory of negligence after discovery of peril.

By appropriate demurrer two main points of objection to the count were urged below, and, being overrul-

ed, are again pressed here. One is that Morris sues in his individual, and not in a representative, capacity. The caption to the count, which was altered by amendment, describes the plaintiff as "W. C. Morris, Adm'r., etc." In the body of the count the reference to the actor is as "plaintiff," and otherwise, referring to the deceased, as "plaintiff's intestate." The caption of the original complaint described Morris "as administrator of the estate of Evanda Pearson" and in the body of the first count it is stated Morris sues as administrator of the estate of Evanda Pearson. The status is not materially different from that ruled upon in *K. C., M. & B. Ry. v. Matthews,* 142 Ala. 298, 39 South. 207. It was there held that the action was in a representative capacity. We do not understand *Bryant v. Sou. Ry. Co.,* 137 Ala. 488, 34 South. 562, to be opposed by the *Matthews Case,* though it is expressly ruled in the latter that original counts may be looked to in determining whether a departure has been wrought in the count added by way of amendment. The objection stated was properly disallowed.

The other objection is that in the count the imputation of the negligence alleged is confused. In one averment, it is imputed to the servants of the defendant, and in another to the defendant; the appellant ascribing to the latter averment the meaning of corporate negligence. We do not think the allegations susceptible of the construction appellant will put upon them. The count must be construed as a whole. Nor should it be construed entirely without reference to the idea patent on its face intended to be expressed. The count was framed to assert that plaintiff's intestate was killed by a car of the defendant, and that, when the injury was suffered, the car was under the control and management of the defendant's servants, etc. After alleging the negligence of these servants, etc., in the premises and the death of the intes-

tate resulting therefrom, it is then written that "her death was caused by the failure of the defendant to use reasonable care and diligence to avoid" the injury "after discovering her danger of injury." This latter averment had been made before in the count in connection with the negligence ascribed to the servants, etc. It is evident that the tautological, latter, averment, referring to the defendant's want of care and diligence, was no more than the expression by the pleader of the ultimate responsibility of the defendant whose representative had occasioned, after discovering her peril, the alleged culpable wrong to plaintiff's intestate. In the scope of the servants', etc., duty their knowledge of peril was that of the defendant. Their eyes were its eyes in an action of this character. *B. R. L. & P. Co. v. Glover,* 142 Ala. 492, 38 South. 836, dealt with a count (fifth) purporting to charge a wanton, etc., injury, and this court held that the count did not impute the requisite knowledge to the motorman, but to the defendant, and thereby failed to charge an essential to wantonness, etc., viz., knowledge of the agent or servant whose act produced the movement of the car from which the injury was alleged to proximately result. The *Glover Case* is not akin to that at bar in the particular under consideration. Aside from the construction given the count by us the recent decision in *B. R. L. & P. Co. v. Moore,* 151 Ala. 327, 43 South. 841, is authority for the unsoundness of appellant's objection. It accordingly results that the defendant was not due the affirmative charge on the theory that the conjoint charge of negligence by the servants, etc., and by the defendant were not proven as alleged, since there was testimony tending to show the negligence averred after discovery of peril, and, if credited, availed to render the defendant liable, unless contributory negligence relieved it. The count is not otherwise objectionable.

[Birmingham Railway L. & P. Co. v. Morris.]

The witness Shelly was asked how fast the car from which intestate had alighted was going just previous to the injury. He answered that he did not know. He was then asked whether it was going fast or slow. Objection was made to the question because it sought immaterial, irrelevant, incompetent, and illegal testimony. One of the vital issues under the ninth count was at what distance, and the surrounding circumstances, the motorman of the car inflicting the injury first saw the children as they approached or were upon the track. To determine that issue, it was necessarily pertinent to inquire how rapidly or slowly the first train cleared and uncovered, from the viewpoint of the motorman on the car producing the injury, the children as they started across the two tracks. This brief statement will suffice to show that none of the grounds of objection were well taken. The answer was: "Not very fast, I don't think." The motion to exclude was properly overruled, because the answer was equivalent to his best judgment between the two alternatives, fast or slow. The previous statement that he did not know how fast the car was then running referred obviously to the rate of speed, and not to its motion of fast or slow.

The court permitted plaintiff to introduce rule 204, shown by some of the testimony to be in force on the occasion in question; and also admitted testimony of a custom of like character to the requirements of rule 204 prevailing in the operation of defendant's cars and trains. Rule 204 reads: "When passing standing cars gong must be rung and car brought to a stop with front *and* opposite rear end of standing car." It is too evident for doubt that the italicized (by us) word shold be *"end"* and not *"and"*; that the error is typographical. The rule would be senseless otherwise. Evidence was properly admitted, if the

rule was admissible, to explain the patent error in printing. We think, in the first place, that this rule was without legitimate bearing on the issues arising from the averments of the ninth count or those raised by the one plea of contributory negligence to this count, alleging want of proper care, etc., on the part of intestate after discovery of her own peril. The breach of the rule could not avail one who concurrently with such breach or subsequent thereto negligently went upon the track of the car driven thereon in violation of the rule. Such conduct by the injured party would have at least neutralized the negligence of the defendant's servant in violating the rule, and therefore defeated recovery for the injury suffered. In such case the injury could not be ascribed for proximate cause to the breach of the rule. Indeed, the conclusion cannot be avoided, though the rule may have been negligently breached and also the intestate might be conceded for the sake of the argument to have negligently put herself in a position of peril even subsequent to the breach of the rule; yet, under the averments of negligence in the ninth count, the defendant might be held liable for negligent failure in duty arising out of the condition created by both the negligences stated, unless the imperiled intestate was then, after she became aware of her peril, contributorily negligent in conserving her own safety. Accordingly, it is clear that if only the ninth count had been in the case at the time the testimony as to the rule, and the custom like it, was admitted, error to the prejudice of defendant would have obtained. But the tenth count, though later charged out, was in issue when this testimony was admitted. That count, though within our rule, was as comprehensive and indefinite in averment of negligence to injury as our practice in such cases allows. Under the allegations of the tenth count, we think both the rule and the

like custom was admissible. They tended to show negli-
gence. The argument opposed to the action of the court
below in admitting evidence of the rule and of the cus-
tom is largely based upon the decision in *A. G. S. R. R.
v. Clark,* 136 Ala. 462, 34 South. 917. The action there
was for negligently setting fire to cotton. Rules of the
defendant were admitted, over objection, whereby pre-
cautions were enjoined upon enginemen in the opera-
tions of their locomotives near or about cotton plat-
forms. The decision took the admitted rule to require
every precaution to prevent the destruction of property
by fire; whereas the legal standard, as therein declared
by the court, was such care· as the ordinarily prudent
man, likewise stationed, would exercise in the premises.
The reasoning on which the holding was rested (and it
is unassailable) was that the exaction of legal duty
could not be raised to an uncontracting plaintiff's ad-
vantage by a rule of the carrier requiring greater care
than the law commanded. The standard of negligence,
it was held, could not be altered—contracted or expand-
ed—by a rule of the carrier under such circumstances.
But that is a totally different matter from the proposi-
tion contended for by appellee as determinative of the
admissibility of the rule and custom in question. His
insistence is that the rule and custom were admissible
to show what was negligence, as tending to show what
would have been proper care under the circumstances
of one ordinarily prudent in the operation of the car
inflicting the injury. The law has not· defined, for it
cannot, what is proper care in such cases. The issue
of negligence vel non in such cases is as generally a
mixed question of law and. fact; and the law alone is
inadequate to solve the matter. It must therefore be
solved by recourse to proof tending to establish what
was the care one ordinarily prudent would have exer-

cised under the circumstances; and, if that care was not exercised by the party charged, then the law pronounces that dereliction to be negligence. The distinction to which we have adverted, viz., between the inadmissibility of the rule and custom to establish a standard of negligence and their admissibility as evidence of what was or was not ordinary prudence under the circumstances present, is stated, elaborated, and approved by Wigmore, § 461, first book. After setting down the distinction, the writer thus continues: "This distinction is patent enough, but it is sometimes judicially ignored. Such evidence is sometimes properly excluded on the erroneous supposition that the mere reception of it implies that it is to serve as a legal standard of conduct. The proper method is to receive it with an express caution that it is merely evidence, and is not to serve as a legal standard." He then illustrates with two apt quotations from decisions treating the exact question.

This court in *Helton v. Ala. Mid. R. R.*, 97 Ala. 276, 283, 12 South. 276, 284, held that a rule giving defined significance to a certain act was properly admitted in evidence "as shedding light on the question of negligence on the part of the engineer on the occasion of the plaintiff's injury." The plaintiff was sent forward with red and white lights to stop a coming train. He fell sick or unconscious on the track, it was alleged, and the train coming on, ran over him, severing an arm. Negligence vel non of the engineer was the issue, and his asserted conduct in not stopping his train upon seeing the white light was held a jury question, as bearing upon the rule which was admitted. We are not prepared to say that the *Helton Case* is in direct point, but it is clear that the doctrine announced by Wigmore was recognized and applied in the ruling made by this court in

*Helton's Case.* In several cases decided here, some of which are noted in brief of counsel for appellee, it was ruled that breach of a reasonable rule by the plaintiff proximately contributing to his injury forbade a recovery therefor. The doctrine announced in Wigmore, supra, appears to be widely approved and applied in many other jurisdictions, though it has been said that there are decisions to the contrary. The Massachusetts court, in *Stevens v. Boston R. R.*, 184 Mass. 476, 60 N. E. 338, is in accord with the declaration by Wigmore. In that case the Chief Justice admits the entire want of harmony in decision elsewhere on the point; but, notwithstanding, re-affirms the view of that court as indicated, and that upon a long line of adjudications there and elsewhere. An in discussing the question an analogy is stated to exist between it and the case where an ordinance enjoins a duty. In the course of the opinion it is said: "So a rule made by a corporation for the guidance of its servants in matters affecting the safety of others is made in the performance of duty by a party that is called upon to consider methods, and determine how its business shall be conducted. Such a rule made known to its servants creates a duty of obedience as between the master and servant, and disobedience of it by the servant is negligence as between the two. If such disobedience injuriously affects a third person, it is not to be assumed in favor of the master that the negligence was immaterial to the injured person, and that his rights were not affected by it. Rather ought it to be held an implication that there was a breach of duty towards him, as well as towards the master who prescribed the conduct that he thought necessary or desirable for protection in such cases. Against the proprietor of a business the methods which he adopts for the protection of others are some evidence of what he thinks nec-

essary or proper to insure their safety." The Minnesota court in *Fonda v. St. Paul R. R. Co.*, 71 Minn. 438, 74 N. W. 166, 70 Am. St. Rep. 341, is opposed to the views above stated. It appears to be against the weight of authority and also to be subject to the criticism that the learned court confused the clear distinction pointed out by Wigmore. In argument the decision in *Fonda's Case* is largely rested on the idea that to allow in evidence a rule intended for the safety of third parties as tending to show negligence in the act or omission complained of is, in effect, to penalize the promulgation of such rules—wholesome as they may be—and thus discourage, rather than, as should be done, encourage such a course. It is obvious that these observations are not arguments against the rule there repudiated, but refer to a mere consequence which is itself denied in the very act of promulgating the rule for the conduct of the business pursued. The rule may be rescinded at the pleasure of the institution, and, when it promulgates the rule, it is an admission that due care requires the course of conduct enjoined by the rule. The *Minnesota Case* is not sound, we think, and is also against the weight of authority. These cases may be read with profit on the question: *Lake Shore R. R. v. Ward*, 135 Ill., 511, 26 N. E. 520; *Chicago R. R· v. Lowitz*, 218 Ill., 24, 75 N. E. 755; *C., B. & Q. R. v. Krayenbuhl*, 65 Neb. 889, 91 N. W. 880, 59 L. R. A. 920, 926; *Hobbs v. Eastern R. R.*, 66 Me. 572; *Frizzell v. Omaha R. R.*, 124 Fed. 176, 59 C. C. A. 382; *Nassau v. Corliss*, 126 Fed. 355, 61 C. C. A. 257; *G., C. & F. R. v. Bell*, 24 Tex. Civ. App. 579, 58 S. W. 614; *Ga. R. C. Co. v. Williams*, 74 Ga. 723; *Atlanta Ry. v. Bates*, 103 Ga. 333, 30 S. E. 41; *Chicago Ry. v. Lowell*, 151 U. S. 209, 217, 14 Sup. Ct. 281, 38 L. Ed. 131; *Warner v. B. & O. R. R.*, 168 U. S. 339, 18 Sup. Ct. 68, 42 L. Ed. 491. As stated before, under the broad

averments of negligence in the tenth count, the negligent breach of the duty, if found, in respect of the observance of proper care on the part of the motorman in control of the car approaching on a parallel track to that occupied by the car just left by the intestate, was, of course, an issue; and at that stage of the trial at which the question of admissibility of rule 204 and of evidence of a like custom arose the court could not assume and anticipate that a condition would later prevail at the conclusion of the whole testimony warranting the affirmative charge against a recovery under the tenth count. If the defendant had properly sought the exclusion of such testimony when the affirmative charge as to count ten was given, all testimony anent the rule and the custom would doubtless have been excluded. The trial court cannot be put in error for the admission of legal testimony within issues made by some of the counts, and not within those made by others, by the act of latterly charging the jury in denial of the right to predicate a recovery on certain counts to which only the testimony complained against could be legally admitted to support. Some of the argument for appellant proceeds on the idea that, when the rule and custom were admitted there was no tendency in the evidence to the effect that the car was standing within the rule. The object of the rule being to render more safe the alighting of passengers from one car by requiring the gong of an approaching car, on the other track to be rung, and also by stopping it opposite the car from which the passengers had alighted, we think the question whether the east-bound car was a standing car within the rule was for the jury. There was testimony tending to show that the east-bound car was moving very slowly, and had only moved a short distance when the rapidly moving west-bound car passed it. If this be true, and there was

other testimony having a like tendency, the motorman
of the approaching west-bound car may have seen the
east-bound car when it was standing, and that in such
nearness as to require of him as an ordinarily prudent
operative observance of the rule with respect to the ring-
ing of the gong and preparation to stop his car opposite
the then standing car. The track at that point was, as
appears from at least some of the testimony, unobstruct-
ed for many hundred feet in the direction from which
the approaching car came. We do not think the rule or
the custom can be circumscribed in effect and control-
ing operation to that exact moment of time when one
car is perfectly still, and when the opposite car is so
related to the stationary car as that, if the opposite car's
movements were unhindered, it would pass a standing
car. If the contrary was the effect of the rule or cus-
tom, the very reason of their existence would be ignor-
ed. If the ringing of the gong and the stopping of the
car were by the rule or custom required only when one
car was perfectly at rest and when the moving car was
exactly opposite the former, the rule or custom could
not possibly serve its object, because it is hardly possi-
ble, much less probable, that a car running 20 miles an
hour could be gotten under control within the length
of another motor car and trailer. Giving the rule or
custom their only rational construction, it must be held
that their observance comprehends the exercise of ordi-
nary prudence in view of their object as to when, at
what point, before the moving car reaches the station-
ary car, the gong should be sounded and the preparation
to effect the required stop opposite the standing car
should be entered upon. And, if the standing car pro-
ceeds upon the passage thereby of the opposite car, a
like prudence, in keeping with the object inspiring the
rule or custom must be exercised. There was no error

admitting the rule or custom under count 10. The exclusion of both later was not sought. We are unable to see how the testimony as to the number of cars operated over that line about the time of the event was, if error, prejudicial to defendant. We are not at all sure but that such testimony was admissible in proof of the averment that the defendant engaged in operating cars, etc., as a common carrier of passengers for hire. If error at all under the issues then in the case, the question to the witness Brown as to the number of people traveling on defendant's cars at certain hours was without prejudice to defendant. The court excluded all rules save 204; hence their original admission was rendered harmless, if then erroneous.

The defendant propounded under the statute interrogatories to the plaintiff. In the answer by the plaintff, and not called for by any interrogatory propounded to the plaintiff, this sentence appears: "And she was considered by her schoolmates and teacher as very bright." The next and concluding expression in the answer was: "She was my wife's sister's child, and I knew her to be very bright." On the trial, when the defendant offered these answers as a whole, plaintiff moved to exclude the first quoted expression, and over defendant's objection the court granted the motion. It has been several times held here that the purpose of this statute—discovery in action at law—was to elicit legal testimony. The statement excluded was palpable hearsay. The privilege of offering the answer was entirely with defendant. The status then was that the court excluded illegal testimony offered by the opposite party. We see no reason to deny the respondent to such interrogatories the right to eliminate illegal evidence he has incorporated in his answers. Such was the early view of this court in *Pritchett v. Munroe,* 22 Ala. 501, 509.

The twenty-ninth assignment of error was robbed of its point by the subsequent allowance by the court of the same question, in substance, previously disallowed.

This brings us to the consideration of the errors assigned on special charges refused to defendant. The court at the instance of the defendant charged the jury that only one count, the ninth, was submitted to the jury for their consideration; and also on like request instructed the jury in the strongest terms, what was essential to be shown by the evidence in order to sustain the averments of that count for negligence after discovery of intestate's peril. Among the refused charges are those numbered 1, 2, 3, 4, 8, 12, 13, and 14. These charges related to matters that could not have had any bearing upon the issues made by the ninth count, nor upon the issues made by the pleas thereto. They evidently related to matters thought to be pertinent to the issues raised by other pleadings. Since the court eliminated all counts save the ninth, no injury to appellant, if error at all, could have attended the refusal of such charges. Besides, it does not appear that the refusal of these charges was previous to the action of the court in restricting the right of possible recovery to the negligence charged in the ninth count.

Charge 11 was properly refused because it was aside the issue, and because it was misleading. The issue was due care and diligence vel non after discovery of peril. The charge deals only with his acts after seeing the intestate without regard to her peril. Furthermore, the charge was calculated to mislead the jury, in that a distinction might be taken between an experienced motorman's ability to stop the car and that of this motorman, and the latter to the exoneration of defendant from liability. The question was, not whether this motorman did all he could to stop the car, but whether, after be-

coming aware of intestate's peril, he used all means at his command, skillfully, and in proper order to avert the injury.—*Louisville & N. R. R. v. Young,* 153 Ala. 232, 45 South. 238, 16 L. R. A. (N. S.) 301. Additionally the charge takes no account of the duty dependent for existence and character of performance upon the circumstances attending the event to warn the imperiled party.—*L. & N. R. R. v. Young, supra.*

The charges 9 and 10 affirm the absence of evidence to justify statements made by plaintiff's counsel in argument. The objection should have been made when the statements were made. Special charge is not the proper method for obviating the effect of argument asserted to be improper. There was no error in the refusal of these charges.

The general affirmative charge, and also that confined to count 9, were properly refused to defendant.

Refused charge 5 finds substantial duplicate in several of the charges given at the instance of the defendant.

The issues in the case on the ninth count, and the pleading to it, were for the jury. The evidence on the trial is elaborately set out in the bill. We will not attempt a rehearsal of it. A careful consideration of it must convince that the testimony, either as matter of conflict apparent or as matter of reasonable inference, required the jury's service to determine the facts under the law.

We discover no error in the record, and the judgment is affirmed.

Affirmed.

DOWDELL, C. J. and ANDERSON and SAYRE, JJ., concur.