# Alabama City G. & A. Ry. Co. *v.* Heald, *et al.*

## *Crossing Accident.*

(Decided April 25, 1912. Rehearing denied June 29, 1912. 59 South. 461.)

1. *Pleading; Complaint; Capacity of Plaintiffs.*—Where the caption describes plaintiffs as R. and A., administratrices of H., deceased, it sufficiently shows that plaintiffs sue as administratrices, although in the body of the complaint they are merely mentioned as plaintiffs.

2. *Evidence; Res Gestae.*—Where death came to plaintiffs' intestate by being thrown in front of a street car by a frightened horse, which he was attempting to hold by the bridle until the car passed, the fact that just before the accident, decedent told witnesses that the horse was the biggest fool on earth about a car, was not admissible as a part of the res gestæ.

3. *Same; Conclusions.*—Testimony that the motorman had no time to stop the car, etc., before striking intestate, was properly excluded as stating conclusions.

[Alabama City G. & A. Ry. Co. v. Heald, et al.]

APPEAL from Etowah Circuit Court.

Heard before Hon. JAMES E. BLACKWOOD.

Action by Robbie F. Heald and another as administratrices, against the Alabama City, Gadsden & Attalla Railway Company, for damages for causing the death of their intestate. Judgment for plaintiffs and defendant appeals. Affirmed.

HOOD & MURPHREE, for appellant. There is nothing in the body of the suit showing that it was brought by plaintiff in their representative capacity, and this should be shown somewhere very clearly, else the judgment therein would not support res judicata, and the affirmative charge requested by defendant should have been given.—*Lucas v. Pittman*, 94 Ala. 616; *Jenkins v. Bramlett*, 131 Ala. 597; *Bryant v. So. Ry. Co.*, 137 Ala. 488; *K. C. M. & B. v. Matthews*, 142 Ala. 298. The evidence was clearly admissible as a part of the res gestæ that the horse was the biggest fool in the world about a car, as it bore upon and illuminated one of the chief issues in the case.—*Sherry v. State*, 144 Ala. 35; *Hall v. State*, 130 Ala. 45; *Starkes v. State*, 137 Ala. 9; *Campbell v. State*, 133 Ala. 81; *Wallace v. Ala. T. Co.*, 40 South. 89; *Hereford v. Coombs*, 126 Ala. 369. The witnesses had stated with great particularity all the details of the affair and it was therefore competent for them to state the collective fact that the motorman could not stop the car before it struck Heald.—*A. G. S. v. Yarbrough*, 83 Ala. 238; *Lewis v. State*, 49 Ala. 1; *Reeves v. State*, 96 Ala. 33; *E. T. V. & G. v. Watson*, 90 Ala. 41; *Thornton v. State*, 113 Ala. 43. Counsel discuss other assignments of error, but without further citation of authority.

DENSON & DENSON, for appellee. The matter complained of as to who were plaintiffs and as to how

plaintiffs sued, has been determined against the conten-
tion of appellants in the case of *L. & N. v. Trammell,*
93 Ala. 351. What Heald said about the horse being
afraid of the car was in no sense of the res gestæ, and
hence, not admissible. Witnesses cannot state conclu-
sions, and the court properly struck the same from the
showings made for these witnesses.—*B. R. L. & P. Co.
v. Randall,* 149 Ala. 544; *Bessemer L. & I. Co. v. Camp-
bell,* 121 Ala. 63; *Bir. R. & E. Co. v. Jackson,* 136 Ala.
286; *B. R. L. & P. Co. v. Rutledge,* 142 Ala. 204.

SAYRE, J.—In the caption of the declaration or com-
plaint, plaintiffs describe themselves as "Robbie F.
Heald and Ada V. Heald, administratrices of Pat H.
Heald, deceased." In the body of the complaint,
"plaintiffs," without other statement of the capacity in
which they sue, claim damages for the death of their
"intestate," alleged to have been caused by the negli-
gence of defendant's servants in the operation of a car
upon defendant's railway. There was no demurrer.
After the evidence was closed, defendant requested
charges which raised the point that plaintiffs could not
recover for the reason that the suit had not been brought
by plaintiffs in their character as personal representa-
tives of the deceased. This objection to the judgment is
based upon the omission of the word "as" between the
names of the plaintiffs and the descriptive words "ad-
ministratrices," etc. We have cases, and they are of un-
questioned authority, which hold that the addition of
the word "administrator," and the like, to the name of
the party without the interposition of the word "as,"
constitutes mere descriptio personæ, and does not give
the party other than a personal or individual character
in the action. But it has been held that the frame, aver-
ments, and scope of the complaint may suffice to affix

to the plaintiff a representative character in the litigation.—*Lucas v. Pittman*, 94 Ala. 616, 10 South. 603; *Beers v. Shannon*, 73 N. Y. 292. Our conclusion in respect to the peculiar combination presented in this case has been foreclosed by previous decisions of this court. The complaint sets out a cause of action which, by the terms of the statute conferring it, could inure only to plaintiffs in their representative capacity. On consideration of this fact, and the authority of cases adjudged in other jurisdictions, this court held in *L. & N. R. R. Co. v. Trammell*, 93 Ala. 350, 9 South. 870, that the complaint sufficiently showed a suit by the plaintiff in his capacity as the personal representative of the person for whose death damages were claimed. This objection was taken in the same way to the judgment in *K. C., M. & B. R. R. Co. v. Matthews*, 142 Ala. 298, 39 South. 207; but the court, while adverting to another co-operative consideration, gave its clear approval to *L. & N. R. R. Co. v. Trammell*, and sustained the judgment. The facts of the *Matthews Case*, recurred in *B. R. L. & P. Co. v. Morris*, 163 Ala. 190, 50 South. 198, where the objection was made by demurrer on the authority of *Bryant v. Southern Railway Co.*, 137 Ala. 488, 34 South. 562. The demurrer was held to have been properly overruled. *Lucas v. Pittman, supra; Jenkins v. Bramlett*, 131 Ala. 597, 32 South. 575, cited by appellant, and, so far as we are advised, all other cases in that line which hold the mere addition of the words "administrator," "guardian," etc., to be merely descriptio personæ of the party, are to be distinguished from the cases we here follow by the fact that in that line the actions were such as might have been maintained by the plaintiffs individually or in a representative capacity, whereas here the alleged cause of action could have accrued to the personal representative

only. For these reasons we feel bound to deny the merit of those assignments of error which take the point that this suit was prosecuted by plaintiffs as individuals and not as representatives of plaintiffs' intestate.

Plaintiffs' intestate came to his death under the wheels of an electric street car operated by defendant along a street of Attalla. Intestate was driving a horse and buggy out of an alleyway which debouched into the street along the middle of which ran defendant's track. The driveway of the street was about 50 feet wide. Defendant's car was turning into the street from a cross-avenue one-half a block away. The car moved along at a rate of speed estimated by the witnesses at four or five miles an hour. Intestate, evidently observing the approach of the car, alighted from the buggy and held the horse by the bridle or the reins near the bit. The horse showed fright, and intestate's effort to restrain him was noticed by the motorman. As the car approached, the horse began to rear and plung, carrying intestate into the street and somewhat to the west, the direction in which the car was moving. The car slowed up—some of the witnesses say, stopped—shortly before it got opposite the mouth of the alleyway. When it came into collision with intestate, it had either started again, or its speed had been accelerated. After the collision, it moved through a space variously estimated at from 8 to 16 feet; its front wheel stopping on the body of deceased. On the evidence adduced plaintiffs' inference of negligence on the motorman's part and claim to a recovery might have been urged upon the jury in two phases: One, that the horse moved in a way indicative of fright and without pause from the sidewalk to the railway track in front of the moving car; the other, that after carrying deceased upon or in evident dangerous proximity to the track, the horse had

become more quiet, and that thereupon the motorman ran the car against deceased. Defendant's theory of the facts is that after the horse had become quiet, and while deceased was yet at what seemed to be a safe distance from the track, the motorman moved the car to pass deceased, as a prudent motorman, they say, might have done under the circumstances, whereupon the horse plunged forward, striking deceased with his shoulder or the shaft of the buggy and throwing deceased immediately under the overhanging front of the car, after which no human effort could have saved him—a theory of inevitable accident.

To add weight and credit to its contention that the situation after deceased had taken his horse by the head at the sidewalk, or when he had succeeded in measurably quieting the animal after it had carried him into the street, if this last be the true version of what happened, was such as to justify a prudent motorman in supposing he might safely continue the movement of the car, and that what subsequently occurred was not in reason to be expected, but was the result of a most unusually nervous and foolish disposition of the horse, unknown to the motorman, and thus to negative the negligence imputed to the motorman in the management of the car in view of the horse's fright and the efforts of plaintiffs' intestate to restrain him, defendant offered to show by a witness that when deceased had gone to his horse's head, upon witness asking deceased whether his horse was afraid of the car, deceased had replied, "He is the biggest fool on earth about a car." The witness had clearly indicated that he would so testify. The objection to the question was that it called for immaterial, irrelevant, illegal, and incompetent testimony; that it called for hearsay. For the court's ruling in excluding this testimony it is said that, if rele-

41—178

vant and competent for any purpose, it was to prove the contributory negligence of plaintiffs' intestate which was not pleaded.

Appellant's insistence is that the declaration offered in evidence was a part of the res gestæ, had probative effect in the establishment of its theory of the facts, and should have been received. Appellees concede, and properly we think, that if the prudence of deceased in clinging so long to his horse had been made an issue in the case by a plea of contributory negligence, as conceivably it might, this utterance would have been admissible on the idea that it was a contemporaneous verbal act illustrative of what else the declarant was doing. In *Campbell v. State,* 133 Ala. 81, 31 South. 802, 31 Am. St. Rep. 17, the court said broadly that: "Whenever evidence of an act is in itself competent and admissible as a material fact in the case and is so admitted, the declarations accompanying and characterizing such act become and form part of the res gestæ of the act, and as such are competent and admissible in evidence as being explanatory of the act." This principle has its limitations. The act to be illustrated by such testimony must not only be independently material and provable under the issues made, but the utterance must serve to give character to conduct not complete and definite in itself.—3 Wigm. Ev. §§ 1773, 1774. Manning, J., in *Cooper v. State,* 63 Ala. 80, thus states the consideration upon which such expressions are received in evidence: "What a person says that is explanatory of an equivocal or ambiguous act which he is then doing, or situation which he is then occupying (as that of a person in possession of property) may be proved as res gestæ (a part of the thing then going on) to elucidate and define the character of such equivocal act or situation." If the conduct of deceased as constituting con-

tributory negligence had been made an issue in the case, it may be that the jury would have allowed some weight to the utterance of deceased as going to show that he clung to his horse after ordinary prudence dictated that he should let him go. Or if the utterance had been in the hearing of the motorman, it would have been notice to him of the unusual temperament of the horse, and perhaps the jury would have considered that circumstance as sufficient to have called for the exercise by the motorman of an unusual degree of care in dealing with the situation. In that case the evidence might have weighed against the defendant. But there is no pretense that the motorman heard.

The true and only purpose defendant had in offering evidence of what deceased said about the disposition of his horse was to prove as a fact his uncommon proclivity to fright. An exception to the rule which forbids the use of an unsworn assertion, made out of court, as evidence of the truth of the fact asserted, has been established in favor of contemporaneous spontaneous exclamations. The proper limits of such an exception, as Prof. Wigmore observes, must be elusive. He affirms, however, that its core and substance is universally recognized by the courts.—3 Wigm. Ev. § 1746. It is illustrated in our case of *Dismukes v. State,* 83 Ala. 289, 3 South. 671, where, on a prosecution for breaking into a dwelling house with intent to commit rape, the exclamation of a young woman, on running from her room in her night clothes, that she saw some one at the window, "being uttered so near the scene of the transaction, and being apparently spontaneous in its nature, * * * was free of all suspicion of device, premeditation, or afterthought," was held to have been properly admitted. Another case of the same sort is *Shirley v. State,* 144 Ala. 35, 40 South. 269, cited by appellant.

The learned text-writer to whom we have referred quotes the language of Bleckney, C. J., in *Travelers' Ins. Co. v. Sheppard,* 85 Ga. 751, 12 S. E. 18, as among the best statements of the principle of the exception. In that case it was said: "There must be no fair opportunity for the will of the speaker to mould or modify them. His will must have become and remained dormant, so far as any deliberation in concocting matter for speech or selecting words is concerned. * * * His declarations must be the utterance of human nature, of the genus homo, rather than of the individual. Only an oath can guarantee individual veracity. But spontaneous impulse may be sufficient sanction for the speech of man as such—man distinguished from this or that particular man. True the verbal deliverance in each instance is that of an individual person. But if the state of his mind be such that his individuality is for the time being suppressed and silenced, so that he utters the voice of humanity rather than of himself, what he says is regarded by the law as in some degree trustworthy." We think the testimony here offered to prove the uncommon disposition of the horse cannot be fairly brought within the reason of the exception. At that time there was no situation calculated to take a man out of himself. Nor was there any statement of fact or impulse begotten of the occasion. The language used was superlative, but it was the language of individual judgment based upon past observation or experience. The statement and the act it accompanied showed precaution and a reasoned regard for the future. It was elicited by a question. It was no more to be received as evidence of the fact stated than if deceased had made the same statement at any other time or place or on any other occasion. We are impressed with the opinion that to admit the statement in question as com-

petent evidence of the fact stated, and for that purpose it was offered, would be, not to recognize an exception to the rule against hearsay, but to deny the rule itself, and we are unwilling to affirm error of its rejection.

Appellant, for the purpose of a trial, admitted showings for two witnesses who had stood by and observed the accident, but who were absent from court. These showings contained the following statements which, on motion of plaintiffs, were excluded: "The motorman had no time to stop the car before it struck Heald." "The motorman had no opportunity to stop the car after the horse plunged out into the street before striking Heald." "It was done so quickly that he had no chance to stop it." On motion these statements were excluded. Appellees claim they were bare conclusions of the witnesses and properly excluded. Appellant insists they were the legitimate statements of a collective fact, and ought to have been admitted. There are cases which give strong color to appellant's contention, but none of them, we think, have gone quite far enough to sustain their assignments of error based on these rulings. These conclusions which the witnesses had drawn from observing the occurrance were just the conclusion, in one aspect of the case, which appellant desired to have the jury draw from a consideration of all the evidence. However far witnesses have been allowed to go in the statement of so-called collective facts, they cannot, on any correct principle, be allowed to decide the issue in controversy. It was the appropriate office of the jury to draw the conclusion whether the motorman waited overlong to stop the car from all the circumstances developed in evidence, the circumstances upon which the witnesses predicated their opinion, and which, so far as we can see, might have been stated to the jury. The law does not permit that witnesses shall

be put in the place of the jury to draw conclusions for them.—*Perry v. Graham,* 18 Ala. 822; *L. & N. R. R. Co. v. Landers,* 135 Ala. 504, 33 South. 482. It does not appear whether the showings were admitted subject to legal exceptions. There is certainly no intendment that the facts were admitted. Without saying whether appellees may not have lost or waived the right to object, the court below must be justified on the ground that it had the right to exclude the mere conclusions of the witnesses.—*B. R. L. & P. Co. v. Rutledge,* 142 Ala. 195, 39 South. 338; *K. C., M. & B. R. R. v. Phillups,* 98 Ala. 159, 13 South. 65.

This court, interpreting section 5365 of the Code, seems to have held that it rests within the discretion of the trial court whether showings shall be taken out by the jury on their retirement.—*Shirley v. State, supra.*

Charges 5 and 6, refused to defendant, were both elliptical, and in other respects faulty.

It may be that the verdict and judgment in this case were unfair to the appellant. If so, the fact is not made to appear to this court in a way to authorize a reversal. It is certain that there was evidence to support the verdict. Its weight was for the jury. If injustice was done, defendant's remedy was to be had on a motion for a new trial addressed to a judge who knew the case better than we can know it, and who, we may presume, would have set the parties right. On the case presented we cannot see our way to a reversal.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.