202      365|
204      428|

202      365|
23 SC   394|

# Fenner *v*. Wilkes-Barre & Wyoming Valley Traction Company, Appellant.

*Negligence—Street railways—Contributory negligence—Speed.*

Where the driver of a wagon having heavy packages to deliver at a store, is compelled by reason of obstructions in the street and on the pavement in front of the store, to back his wagon to the curb so that his horses stand on the track of a street railway, and thus temporarily occupies the street for a legal purpose, he is entitled to have the street cars operated in such a way as not to endanger his life, and if the evidence shows that a car approaches at an excessive rate of speed, without giving a signal, and with the team in full sight of the motorman, and the team is struck and the driver is killed, damages may be recovered from the street railway company for the latter's death. Under such circumstances the question of the company's negligence and the deceased's contributory negligence is for the jury.

Where the employees of a street railway company have for many months knowledge of obstructions on a street, it is their duty to take notice of the conditions prevailing along the track, and to run their cars at a rate of speed which will not endanger the safety of those who by reason of the obstructions may be lawfully on the track.

Argued April 14, 1902.   Appeal, No. 164, Jan. T., 1901, by defendant, from judgment of C. P. Luzerne Co., Jan. T., 1899, No. 102, on verdict for plaintiff in case of John W. Fenner and Emma Fenner v. Wilkes-Barre & Wyoming Valley Traction Company and the Borough of Ashley.   Before McCollum, C. J., Mitchell, Dean, Brown and Mestrezat, JJ.   Affirmed.

Trespass to recover damages for death of plaintiff's son.   Before Halsey, J.

The court gave binding instructions in favor of the borough of Ashley.

The facts are stated in the opinion of the Supreme Court.

*Error assigned*, among others, was in refusing binding instructions for the other defendant.

*George R. Bedford*, with him *John T. Lenahan*, for appellant. —The deceased was guilty of contributory negligence :  Winter v. Federal Street, etc., Pass. Railway Co., 153 Pa. 26 ;  Smith v. Electric Traction Co., 187 Pa. 112.

*John McGahren*, with him *W. H. Hines*, for appellee.—The case was for the jury : Gilmore v. Federal Street, etc., Pass. Ry. Co., 153 Pa. 33 ; Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180 ; Thatcher v. Central Traction Co., 166 Pa. 71 ; Gaughan v. Second Ave. Traction Co., 189 Pa. 410 ; Cannon v. Pittsburg, etc., Traction Co., 194 Pa. 161 ; Evers v. Phila. Traction Co., 176 Pa. 380 ; Buehler v. Union Traction Co., 200 Pa. 179 ; Callahan v. Phila. Traction Co., 184 Pa, 429.

OPINION BY MR. JUSTICE MESTREZAT, May 12, 1902 :

In the trial of the cause in the court below a recovery was resisted on the ground (1) that the evidence showed the deceased guilty of contributory negligence, and (2) that it failed to disclose negligence on the part of the defendant company. The jury found in favor of the plaintiffs on both questions and the defendant has appealed, alleging as error the court's refusal to withdraw the case from the jury.

The accident which resulted in the death of Edwin Fenner, the son of the plaintiffs, occurred on the track of the defendant company on Main street which runs north and south in the borough of Ashley in Luzerne county. The street at this point is closely built up and both sides are densely populated. On the evening of October 10, 1898, the deceased was in charge of a two-horse spring wagon, delivering goods to the customers of his father, who is a wholesale produce merchant. He had in the wagon a barrel of pears weighing about 250 pounds, a keg of quinces and several baskets of grapes for delivery to Daniel Doyle whose store is on the west side of Main street and ninety feet below Hartford street. He drove to Mr. Doyle's place of business and backed the wagon at right angles against the curbstone for the purpose of unloading the produce. In about two minutes thereafter, one of the defendant's cars going north struck the horses and the front part of the wagon, separating the horses from the wagon and carrying it about sixty feet. The car was stopped at the distance of 160 feet from the point of collision, and the dead body of the young man was taken from beneath it. The accident happened about twenty minutes after six o'clock in the evening. It was not dark but " was getting dusk."

At the place of the collision, Main street is about thirty-one

feet between the curbstones.  Mr. Doyle's property fronts twenty-one feet on Main street and the pavement in front is about twelve feet wide.  The defendant's railway track is twelve feet eight inches from the curbstone.  Directly in front of the center of Doyle's property and on the pavement near the curb was a pile of flagstones about five feet in length and three feet in width.  In the street five feet eight inches north of the flagstone and between the west rail of the track and the curb, was a board pile twenty-seven feet in length, five feet seven inches in width and four and one half feet high.  Twenty-nine and one half feet south of the boards and between the curb and the track was a pile of lath, six feet from the track, twenty-two feet in length, about five feet in width and from three to five feet high.  The grade of Main street is descending from a point 633 feet south of the Doyle property to the place of the accident, and between those points the view is unobstructed.

In support of their contention that the deceased was guilty of negligence contributing to his death, the learned counsel for the appellant claim that he voluntarily placed himself and his team in a place of known danger, and that after having done so he could still have prevented the accident if he had looked for an approaching car which could have been seen 700 feet distant, which would have enabled him to have removed his team from the track.  It is further contended by the appellant that the deceased could have placed his wagon and horses longitudinally with the curb and thereby not encroached upon the defendant's track while the produce was being unloaded.

The facts stated above are undisputed.  It, therefore, clearly appears that owing to the obstructions in the street and on the pavement in front of Mr. Doyle's store, the deceased was compelled to back his wagon to the curb to unload his produce unless he deposited it on the pavement in front of another's property and some distance from the store.  The distance between the pile of lath and the flagstone was not more than fifteen feet and from the heads of his horses to the rear of the wagon was twenty-one feet.  The wagon was so constructed that the front wheels would not turn under the bed and permit the horses to stand at right angles with it.  When the wagon stood against the curb which is twelve feet eight inches from the track, the horses were necessarily standing on the track.

This was the position in which the driver was required to place his team to deliver Mr. Doyle's produce. It was upon the public highway where the deceased had the right to be and where, in the performance of his duty, he was required to be. It was not a place of known danger and the presence of the railway tracks upon the street did not make it so. The right of the defendant to use the track was superior to the right of the deceased to occupy it, but this well established rule did not prohibit the latter from using it temporarily for a legal purpose nor authorize the defendant company's employees in charge of the car to endanger his life when, by the observance of their duty, it could have been avoided. The place of the accident was in the public street where both parties had a right to be, and where each, therefore, was bound to be on the lookout for the other: Warner v. Peoples' St. Railway Co., 141 Pa. 619. The position of the deceased became perilous not by reason of an illegal act in placing his team on the street car track, but by the subsequent recklessness and negligent conduct of the conductor and motorman on the car, which the driver of the wagon could not, and was not required to anticipate. It is not in evidence that he saw an approaching car when he placed his wagon against the curb, nor that he had reason to apprehend the presence of one before he could deliver his goods and depart. The inference from the facts disclosed by the testimony is directly to the contrary. In addition to this, one of defendant's witnesses who was passing Doyle's store when the wagon was backed to the curb, testifies that he did not see the car notwithstanding he was going in the direction from which the car came that struck the wagon. Whether the deceased used ordinary and reasonable care under the circumstances disclosed by the evidence was a question for the jury.

The other ground on which the defendant company seeks to relieve itself from liability in this action is that the evidence fails to show that the accident was the result of the negligence of its employees in control of the car. The argument to support this position was doubtless addressed to the jury, and very properly so. The plaintiffs allege that the defendant's employees were negligent in running the car at an excessive rate of speed and in not giving notice of its approach to the team which was on the track and in plain view of the motorman.

There was abundant testimony to justify the jury in finding against the defendant company on both questions.   Some of the plaintiffs' witnesses testified that they heard no bell or other signal, and others testified that they were in a position to hear and that no warning of the approaching car was given.   There was also evidence that the car did not slacken its speed or stop at Hartford street.   It is true that this testimony was contradicted by the evidence of the defendant, but the court could not determine the question, and withdrew it from the jury. . As to the excessive speed, not only the oral testimony but the conceded facts support the plaintiffs' contention.   Mr. McCormack, an attorney of the Luzerne county bar, and two other witnesses who saw the car going in the direction of the Doyle property, testify that it ran at the rate of twenty miles per hour, and another witness, that it was running very fast.   The testimony of these witnesses was strongly corroborated by the fact that the wagon was carried fifty feet and that the car was not stopped until it had run 160 feet beyond the point of collision. In the language of the late Chief Justice STERRETT in Iaquinta v. Citizens' Traction Co., 166 Pa. 66, " If the testimony relied on by the plaintiff was believed, there could be no doubt as to the gross negligence of the defendant, in recklessly running its car at a dangerously high rate of speed without exercising the precautions necessary to warn the deceased and others on the public street of the danger to which they were exposed." The evidence of the defendant was that the speed was not excessive, that the car was not running more than five or six miles an hour.   The conflict of testimony necessarily carried the case to the jury which was warranted in finding that a rate of speed of twenty miles per hour, under the circumstances of the case, was negligence.   The street was narrow and the community was thickly populated.   The obstructions in front of Doyle's property had been there for five or six months prior to the accident and the defendant's employees in charge of the car knew this fact.   It was their duty to take notice of the conditions prevailing along the track at the time of the accident and which, according to their own testimony, they knew, and to run their car at a rate of speed which would not endanger the safety of those who might lawfully be on the track.   A failure to observe these precautions was negligence.   As said by our Brother

DEAN in Thatcher v. Central Traction Co., 166 Pa. 70, "If the gripman recklessly ran on at a high rate of speed, when the probable consequence was a collision, that was negligence for which the defendant was answerable."

It is contended by the appellant that the collision not having occurred at a crossing, its duty did not require it to signal the approach of the car to the team; that it is not required "to anticipate danger at every private property on its route." We need not stop to determine the correctness of these suggestions. The undisputed fact here is that the motorman had a clear, unobstructed view of the team for a distance of more than two hundred yards, and therefore his duty required him not only to run his car at a reasonably safe speed but also to give warning of its approach to the wagon, regardless of the fact that it was on the track, not at a crossing. It was a place of danger, —where a collision might occur—and hence it was his duty to take the necessary precautions to avoid an accident. "The movement of cars by cable or electricity along crowded streets," says the late Chief Justice GREEN, in Carson v. Federal Street, etc., Railway Co., 147 Pa. 224, "is attended with danger, and renders a higher measure of care necessary, both on the part of the street railways, and those using the streets in the ordinary manner. It is the duty of railway companies to be watchful and attentive, and to use all reasonable precautions to give notice of their approach to crossings and places of danger. Their failure to exercise the care which the rate of speed and condition of the street demand, is negligence." Winter v. Federal Street, etc., Pass. Railway Co., 153 Pa. 26, relied upon by the defendant is clearly distinguishable from the case in hand. In that case, the accident occurred at eight o'clock in the evening when it was dark with no lights near the horses to enable the motorman to see them. There was no obstructions which prevented the wagon from being placed longitudinally along the curb, and as observed by the court, "it was obviously unnecessary for the appellee to drive upon and occupy the railway tracks, as he did, for the purpose of unloading the safe." These facts are referred to in the opinion as showing the plaintiff's negligence. Here, however, it was not dark but "was getting dusk," and the team driven by the deceased could be and presumably was seen by the motorman for a sufficient

distance to enable him to prevent a collision.  Here also the delivery of the produce to the customer required the wagon to be backed to the curb and consequently that the horses should stand upon the track.  Neither of these controlling and distinguishing facts appear in Winter v. Federal Street Railway, supra.  In Smith v. Electric Traction Co., 187 Pa. 110, and Bornscheuer v. Consolidated Traction Co., 198 Pa. 332, cited by appellant's counsel the party injured drove in front of an approaching car clearly and plainly visible to him had he looked before entering upon the track.  Neither of the cases cited by counsel rule the case at bar against the plaintiffs.

The assignments of error are overruled and the judgment is affirmed.