RICHARD L. POLLICA *v.* TWIN STATE GAS AND ELECTRIC COMPANY.

Special Term at Brattleboro, February, 1914.

Present:   POWERS, C. J., MUNSON, WATSON, AND HASELTON, JJ., AND
WATERMAN, SUP. J.

Opinion filed October 14, 1914.

*Street Railroads—Operation—Personal Injury—Negligence and
Contributory Negligence—Question for Jury—Harmless
Error—Instructions.*

The motorman of a street car is bound to know that teams are likely
to be in one of the busiest streets of the village, that there is a
heavy down grade in a certain section, that there is difficulty in
stopping owing to a "sweaty" rail, and to operate his car in
view of these conditions.

On the evidence in an action against a street railroad company for
a collision with a team standing in the street across the track,
*held* that all questions of negligence and contributory negligence
were for the jury.

The mere placing of a team across a street railroad track, or such
placing of the team and then going to and across the sidewalk
to load a barrel or the like, is not negligence *per se.*

In an action against a street railroad company for a collision with
plaintiff's team while standing in the street across the track,
where the court correctly stated the rule as to the operation of
street cars, the fact that it also instructed merely from the rules
governing the operation of steam cars differed from those ap-
plicable to the operation of street cars could not have prejudiced
defendant.

In an action against a street railroad company for a collision with
plaintiff's team while standing in the street across the track,
plaintiff, though negligent, could recover if defendant failed in
its duty after it discovered the unattended team, unless plaintiff
by due care could have avoided the consequence of defendant's
negligence. *French* v. *Grand Trunk Ry. Co.,* 76 Vt. 441, dis-
tinguished.

Though the driver of a team is required to make a reasonable use of
the street, and to exercise the care of a prudent man to avoid in-

jury from street cars, it cannot be said, as matter of law, that one driving or halting his team across a car track must at all times and in any circumstances have his horse under control.

CASE for negligence. Plea, the general issue. Trial by jury at the April Term, 1913, Windham County, *Taylor,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Clarke C. Fitts* and *Hermon E. Eddy* for the defendants.

*Barber & Barber* for the plaintiff.

POWERS, C. J. The plaintiff runs an express and job team in the village of Brattleboro. Among the duties of his occupation was the removal of garbage from a boarding-house called "The Palms." This place is on the southerly side of Canal Street, which is, next to Main and Elliott Streets, the busiest street in the village. There is no driveway from this street to The Palms, and the bulkhead through which the garbage was taken from the basement, was at the rear of the house and about seventy-five feet from the sidewalk. This sidewalk was six feet wide, and Canal St. is thirty-eight feet wide.

The defendant owns and operates an electric street railway through Canal St., the track of which is four feet and eight and one-half inches wide. The inner rail in front of The Palms is two and one-half feet from the curbing on that side of the street. There is on the inner line of the sidewalk in front of The Palms, a bank wall, with three steps leading up to the lot. The gutter was eighteen inches below the sidewalk. On the morning of October 5, 1912, the plaintiff backed his one-horse express wagon up to the curbing in front of The Palms directly across the defendant's track for the purpose of getting the garbage. After he had so located his horse and wagon, not then knowing the schedule on which defendant's cars were running, he looked in both directions for approaching cars, saw and heard none, and went back to the basement of The Palms and brought to and placed in the wagon a barrel of garbage. The trip took about two minutes. He then again looked up and down the street for cars, discovered none, and went for another barrel, brought it out and placed it in the wagon. No car having shown up, he went for a third barrel and was returning with it when he

heard a noise and immediately left the barrel and went towards his team. As soon as he cleared a house which obstructed his view, he saw a car of the defendant's coming down Canal St. from a westerly direction at a rapid rate of speed. He spoke to his horse urging him forward and did all he could to avert a collision. But without slackening its speed, the car struck the horse, knocked it down, and shoved it and the wagon along for a distance stated as high as three rods, before it came to a stop. The horse was killed and the harness and wagon damaged. The suit is brought for the recovery of the damages thus caused. There was evidence tending to show that the car was running ten or fifteen miles an hour just before it struck the team, and that the motorman could have seen the team from a point three hundred feet away. As the car approached from the west, the first two hundred and forty feet of this distance was practically level, though slightly down grade, and the last sixty feet were on a six to eight per cent. down grade. The horse was gentle, was not afraid of cars, and was accustomed to stand without hitching. There was evidence of a way to reach The Palms from the rear over private land, but the plaintiff understood that the owner would not permit him to cross there, though he never asked permission. There was also evidence that a car, under ordinary conditions, could be brought to a stop, when going fifteen miles an hour, in one hundred and seventy-five feet. There was the usual conflict in the evidence regarding speed, conditions and other facts, but giving the plaintiff the benefit which defendant's motion required the foregoing facts were supported.

The defendant's evidence tended to show that the rail was "sweaty" that morning, and that there were fallen leaves on the rails; that this same motorman had had trouble in stopping the car that morning at other places; that the car was moving at its usual rate of speed of six or eight miles an hour; that the motorman discovered the team when he was about two hundred feet away; that he immediately applied the brakes and sanded the rail, and when this failed to stop the car, and at a point about one hundred feet away, he reversed the power, but was unable to avoid the collision. That he called to the plaintiff to get the team out of the way, that the car was slowed down to three or four miles an hour when it struck, and that he did all he could to avoid the accident.

At the close of the evidence, the defendant moved for a verdict on the following grounds:

1. Because the plaintiff had failed to show absence of contributory negligence.

2. Because the case failed to show negligence on the part of the defendant.

3. Because there was no evidence tending to show that the plaintiff was in the exercise of due care at the time of the accident.

4. Because there was no evidence tending to show that the defendant's servants did not do all they could to prevent the accident after the situation of the team was discovered.

This motion was overruled and the defendant excepted.

There was no error in this ruling. That a trolley car is so operated in one of the busiest streets of a village like Brattleboro that its speed of 15 miles an hour is not slackened within three hundred feet, when, ordinarily, it can be brought to a standstill from that speed in 175 feet, is so indicative of bad handling as to prevent its being ruled, as a matter of law to be without negligence. In saying this, we give the plaintiff, as we are bound to, the benefit of that construction of the evidence most favorable to him. The defendant seems to overlook this requirement, and dwells upon the evidence which sustains its claim. The motorman of this car was bound to know that teams were likely to be in Canal St., and that there was a heavy down grade at the place where the collision actually took place, and he was bound to operate his car in view of these well known conditions.

Even if we give effect to all that the defendant's evidence tended to show regarding conditions that morning, the motorman is left in no better position. He knew he had a slippery rail; he knew about the leaves on the track; knew that he had already had trouble in stopping the car. And these facts, in connection with those already alluded to, called upon him to exercise unusual vigilance and caution to meet the increased hazards thus created. It may well be that the jury, in determining how a prudent man would act in such circumstances would conclude that he should have approached the grade on Canal St. with speed sufficiently reduced below the usual rate to insure his control of the car. The jury was not bound to accept his statement that he did all that he could to stop his car. There

was evidence that he did not. He ran one hundred feet after the team came into full view before he did anything. To be sure, he said he did not see it before he acted. He should have, and the jury was to say whether he did or not. He ran another hundred feet before he reversed the power, which appears to have been the most effective means of stopping the car. All this time he knew of the sweaty rail and the difficulty of stopping, and that he was approaching a six to eight per cent. down grade. The defendant's evidence tended to show that the car was slowed down to three or four miles an hour. The jury might have concluded that it would have been fully stopped if the motorman had reversed the power more promptly.

The defendant says that the case shows such unmistakable contributory negligence that a verdict should have been ordered on that ground. And especial reliance is placed on *Gilman* v. *Fed. St., etc. Ry. Co.*, 153 Pa. 21, 25 Atl. 651, 34 Am. St. Rep. 682, and *Winter* v. *Fed. St., etc. Ry. Co.*, 153 Pa. 26, 25 Atl. 1028, 19 L. R. A. 232,—both of which were cases where the plaintiff left his team standing across a street railway track in the evening. So far as these cases are authority for the defendant's contention, we decline to follow them. In *Fenner* v. *Wilkesbarre & W. V. Traction Co.*, (Pa.) 51 Atl. 1034, it was held that it was not negligence *per se* to back a team up to the curbing in the day time to make delivery of goods, though in doing so the horses necessarily stood upon the track of a street railway, and the distinction between such a case and the Winter case above referred to was pointed out. In *Albert* v. *Bleecker St. R. Co.*, 2 Daly (N. Y.) 389, it was held not negligence *per se* for an expressman to leave his team unattended in a street where it was liable to be hit by the defendant's car.

The true rule in that how far one can go in leaving a team standing on a street railway track is a question of fact depending on the surrounding circumstances. The mere placing of a team across the track certainly cannot be held to be negligence *per se*. Nor can it be said that so placing the team and going to the sidewalk to load a barrel, for instance, would. be negligence *per se;* nor even if the driver stepped across the sidewalk to a store door for that purpose. How far away he could get before he lost his standing as a prudent man would depend upon the character of his horse, what he knew or ought to have known about the cars, their schedule and speed—and perhaps other circum-

14

stances,—which would impress different men in different ways and make a case for the jury. The plaintiff was rightfully in the street, and was making a lawful use of it. All that the law required of him was to act the part of a prudent man in the exercise of this right. The question whether or not he met this requirement was correctly disposed of below.·

In the course of the charge, the court told the jury that the rules governing the operation of steam railroads and street railroads differ, since the former were operated at high rates of speed and over private rights of way. To which the defendant excepted. Without intending to intimate a doubt of the truth of this proposition, we content ourselves with saying that it is perfectly obvious that the defendant suffered nothing from the statement. The court made no attempt to define the difference referred to, but proceeded to lay down correctly the rule controlling the operation of street cars. This fact is attested by the defendant's failure to except thereto. How, then, could the defendant possibly be prejudiced by the statement that the rule as to steam roads was something else? The answer plainly is that it could not have been.

The defendant requested the court to charge that if the jury found that the plaintiff had reason to know or by exercise of due care might have known that a car was liable to reach the point of the accident while he was away from the team, he could not recover. And to this the defendant excepted.

Passing over the question whether the phrase "had reason to know" is so indefinite as to vitiate the request, we hold that the request was properly refused. It made the right of recovery depend upon one fact without regard to others of importance. If given, it would deny the plaintiff a recovery, though the defendant failed in its duty after it discovered the unattended team,—some evidence of which is disclosed by the record.

On this branch of the case, the defendant likens it to *French* v. *Grand Trunk Ry. Co.*, 76 Vt. 441, 58 Atl. 722, which would be warranted if it was the plaintiff himself who stood on the track, with nothing to do but step off when the car approached. But leaving his team as he did was a different matter. His act was a completed one, and after he left the team he no longer had the means of averting an accident. The rule in such cases is that a plaintiff, though negligent, may recover, unless he could by ordinary care have avoided the consequences of the defend-

ant's negligence.   So the man who left an ass fettered on the highway was allowed to recover from one who negligently drove into it.   *Hames* v. *Mann*, 70 M. & W. 546.   This view makes the case like *Willey* v. *B. & M. R.*, 72 Vt. 120, 47 Atl. 398.

The defendant also requested the court to charge that it was the duty of a person driving or being with a team upon a car track, to have his horse, at all times, under his control.   The request is too broad.   No such hard and fast rule can be laid down.   The driver of a team is required to make a reasonable use of the street, and to exercise the care of a prudent man in avoiding injury from the street cars.   Suppose that the cars, owing to a break-down at the power station were not running and a driver knew it; or supposing that he had been so informed and without negligence believed it; suppose that, without fault on his part he understood that the cars did not run on a given street between certain hours; is a driver then required to have his horse under control?   Obviously, the rule contended for goes too far and puts too heavy a requirement onto one rightfully using a street over which street cars are run, and the request was properly refused.

*Judgment affirmed.*