(93 South. 73)

## ALABAMA POWER CO. v. BRADLEY.
### (7 Div. 786.)

(Court of Appeals of Alabama. April 18, 1922. Rehearing Denied May 30, 1922.)

**1. Street railroads ⚯99(6)—Automobile driver, stopping between wagon and track, held negligent.**

The driver of an automobile, struck when he stopped between defendant's street car track and a wagon standing at the curb, held guilty of contributory negligence in attempting to beat the street car to the wagon, and in failing to attempt to extricate himself from his peril.

**2. Negligence ⚯83 — Person in peril under duty to avert injury.**

If one negligently puts himself in peril, the duty of active effort to avert injury is as binding on him as is the duty of others to avoid injuring him, or to extricate him from the peril, and he cannot complain that others failed to do for him what he neglected to do for himself.

**3. Negligence ⚯80—Person in peril, not excused from duties by imposition of duties on others.**

The imposition of specific legal duties on one who sees another in peril does not excuse the latter from specific duties imposed by law on him.

**4. Street railroads ⚯85(3)—Automobile and street car have equal rights to use street.**

An automobile and a street car have equal rights to the use of a street, and each owes the other the duty to avoid a collision.

**5. Street railroads ⚯103(3)—Avoidable injury to negligent driver actionable.**

An automobile .driver, guilty of negligence in stopping between· a wagon at the curb and the street car track, so that the street car cannot pass without striking him, may recover, if the street car operatives became aware of his peril in time to avoid injury by the proper use of means at their command, and negligently failed to do so, provided he was free from negligence after becoming conscious of his danger.

**6. Negligence ⚯83 — Subsequent negligence rule stated.**

A negligent plaintiff cannot recover for injuries, if his negligence is not only subsequent to, but concurrent with, the subsequent negligence of defendant;· but, in order for plaintiff to be guilty of subsequent or concurrent negligence, he must have been conscious of his peril at that particular time.

**7. Street railroads ⚯114(19)—Finding of subsequent negligence as to negligent automobile driver held contrary to evidence.**

In an action for damages to an automobile, struck when plaintiff stopped between defendant's street car track and a wagon standing at the curb, the court's conclusion that defendant was guilty of such negligence after the discovery of plaintiff's peril as entitled him to recover notwithstanding his contributory negligence *held* contrary to the weight of the evidence as to speed of the car, which plaintiff saw approaching, though the gong was not sounded.

Appeal from Circuit Court, Etowah County; W. J. Martin, Judge.

Action by C. H. Bradley against the Alabama Power Company for damages to an automobile in a collision. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Hood & Murphree, of Gadsden, for appellant.

Under the facts in this case, the judgment should have been for the defendant. 198 Ala. 124, 73 South. 439; 17 Ala. App. 280, 84 South. 628; 16 Ala. App. 629, 80 South. 693; 198 Ala. 630, 73 South. 950.

Motley & Motley, of Gadsden, for appellee.

It was a question for the jury under all the evidence in the case, and their verdict should not be disturbed. 198 Ala. 124, 73

South. 439; 17 Ala. App. 280, 84 South. 628; 153 Ala. 232, 45 South. 238, 16 L. R. A. (N. S.) 301; 158 Ala. 603, 47 South. 1018; 127 Ala. 189, 30 South. 491; 196 Ala. 148, 72 South. 96; 3 Ala. App. 359, 57 South. 404.

MERRITT, J. The damage complained of happened to the appellee's automobile, which was due to a collision between the appellee's automobile, and appellant's street car, and a wagon, which occurred on a public street in the city of Gadsden. Appellant's street car had just rounded a curve, which was distant about 50 feet from the place where the accident happened. The street car was moving west, while the automobile was moving east. There were four occupants in the car at the time of the collision. The owner (appellee) and two of the occupants testified for the plaintiff on the trial of the case, and were the only witnesses for the plaintiff who testified as to the facts incident to the collision. The plaintiff, appellee, who was driving the car, testified to facts which placed the case in the strongest light from the viewpoint of the plaintiff. He said:

"I was going east, coming toward town, and there was a wagon standing at the curbing, and I saw the street car when it curved toward me in the center of the street, and I estimated that I would have plenty of time to pass the wagon and get out of the way; but when it rounded the curve I saw it was coming faster than I thought he was, and I applied my brakes and stopped. The engine did not go dead, but I stopped. The street car was at least 40 feet from me when I stopped my automobile. I would say the street car was running 35 miles an hour when it ran into me. He ran the platform of the street car beyond the rear end of my automobile, and in doing that he shoved my car over against the wagon. I had a spedometer, and was within the 8 mile an hour limit. * * * The street car slowed up a little before it struck me. * * * I misjudged the speed of the car. I thought I could get by the wagon before the street car got to me, until he turned the curve and I saw he was going faster than he usually goes. * * * When I first observed him approaching, I thought I could get by the wagon and get in next to the curbing before he got to me. * * * I did not attempt to back the car or shut off the engine. I shut off the engine after the collision. I did not attempt to reverse the car and back out. When I stopped the automobile, the street car was 40 feet from me. * * * When I got right close to the wagon, I was going 8 or 10 miles an hour. I had slowed down only a short distance behind the wagon, possibly 20 or 30 feet, but could not say exactly. It required about 15 feet to stop the automobile. I did not slide the car, because I had plenty of time. I said the automobile would stop in 15 feet. I did not say it required that distance. I could have stopped it in 5 feet, I suppose. I did not discover that I could not make it by the wagon until I got right even with the wagon. Then I pulled over as far as I could and stopped the car. I did that as soon as I could, aft-

er I saw I could not get by. * * * No gong was rung by the motorman before the crash."

The appellee admitted writing the following letter, which was admitted in evidence:

"Gadsden, Alabama, May 22, 1920.

"Mr. D. W. Ashmead, Manager Alabama Power Company, Gadsden, Alabama—Dear Sir: I regret very much to have to advise you that my automobile was struck by your street car No. 5, in charge of conductor and motorman, J. M. Pressley, at about 9:30 this a. m., on Forest avenue, just across the street and in front of the First Baptist Church. The car was occupied by myself, Mr. J. W. Towers, Mr. J. B. Caldwell, and C. T. Barron. Fortunately, neither of us sustained any personal injury; however, the car was pretty badly damaged. Had the motorman begun slowing down his car as he should have done, he could have easily avoided running into my car. There was a wagon standing next to the curb, which did not leave room enough to clear my car between it and the street car. I allowed my car to roll along, thinking that I had plenty of time to pass the wagon before the street car met me, and, after I had gotten within about 15 or 20 feet of the wagon, I realized that the street car was coming at a much higher rate of speed than I had anticipated, and I would not have time to pass the wagon. After the motorman realized that I was not going to move any further, he then attempted to stop the street car, which he was unable to do until he had run the front end of it past the front end of my car. Both fenders on the left side of my car were demolished, and both fenders on the right side were damaged by it being shoved into the wagon by the street car. I would like for you to investigate the matter and advise me if you will pay for renewal of the fenders on my car.

"Yours very truly,

"[Signed] C. H. Bradley, Superintendent."

The testimony for the plaintiff further showed that the two occupants of the back seat of the automobile opened the door and got out over the wagon onto the sidewalk before the crash came, and that it took four persons "to pull the car back and pull it out from under the street car." The contention of the defendant from the evidence was that the automobile ran into the street car or that the automobile ran between the wagon and the street car track, where there was not room for the street car to pass, and stopped.

We think the testimony for plaintiff shows, first, that the plaintiff was familiar with the place of accident, and knew the usual rate of speed traveled by the street car at that place; second, that he saw the street car when, or shortly after, it rounded the curve; third, that at that time the street car was 40 feet or more from him; fourth, that he was at that time 15 or 20 feet from where the wagon was standing and the place where the collision occurred; fifth, that both he and the motorman, at or about this time and distance, begun to slow up their cars; sixth,

that plaintiff could have stopped his car in 5 feet, had he so desired; seventh, that, notwithstanding this, plaintiff realizing that he would not have time to pass the wagon before the street car, drove his car at a point opposite the wagon, and on or near the street car track, and stopped it; eighth, that the plaintiff made no effort to extricate himself from the position of danger that he had knowingly and voluntarily placed himself in; and, lastly, that after the motorman had realized the dangerous position of the plaintiff, and that he was going to make no effort to extricate himself, the motorman "then attempted to stop the street car, which he was unable to do until he had run the front end of it past the front end of the automobile." Assuming, then, these to be the facts, the law to us is clear:

"Where a traveler at a public railway crossing, or on a street over which railways are operated, sees a train or street car approaching, misjudges its speed, or, for any reason, his own ability to cross before it reaches the point of his crossing thereof, and makes the attempt, and is injured thereby, he is guilty of contributory negligence, barring a recovery for his injury for any initial negligence of the operative of the train or street car, unless such operative is guilty of simple negligence or the more aggravated wrong, proximately causing the injury after discovery of the traveler's peril." Ross v. Brannon, 198 Ala. 124, 73 South. 439; C. of Ga. R. R. v. Foshee, 125 Ala. 213, 27 South. 1006; A. G. S. R. R. v. McWhorter, 156 Ala. 269, 47 South. 84.

[1-3] It is clear, beyond any sort of doubt, that the driver of the automobile was guilty of contributory negligence, not only in attempting to "beat" the street car to the standing wagon, but for a failure to attempt to extricate himself from a dangerous position, that according to his own testimony, he knowingly placed himself in. No man should put himself in peril, and if he negligently do so the duty of active effort to avert injury is as binding on him as is the duty of other persons to avoid injuring him or to extricate him from peril. He will not be heard to complain that others failed to do for him what he neglected to do for himself. L. & N. R. R. v. Crawford, 89 Ala. 240, 8 South. 243. Neither can it be said, from the testimony in this record, that the appellant was guilty of such negligence after the discovery of the perilous situation of the appellee as would entitle plaintiff to recover. The appellant had the right to expect that the appellee would make some effort to "back out," so to speak, and while certain specific duties have been laid by law upon the appellant, when he sees another in danger, this imposition in no wise excuses one from observing the specific duties imposed by law upon him. Ray v. Brannan, 196 Ala. 113, 72 South. 16; L. & N. R. R. v. Mothershed, 97 Ala. 261, 12 South. 714; A. G. S. R. R. v. Roach, 110 Ala. 266, 20 South. 132.

[4-7] While the testimony is in conflict as to whether the motorman sounded his gong, assuming that he did not, we fail to see the failure to do so could be hurtful to appellee, for he had notice of the approach of the street car, and according to his testimony saw its approach some several feet from the point of collision, and notwithstanding its unusual speed, he went to a point and stopped, a point where he knew the street car could not pass without striking him. He not only selected a dangerous place, but remained there, conscious of the danger, not only when he assumed the position, but when the damage occurred. An automobile and street car have equal rights to the street and use thereof, and each owes the other the duty to avoid a collision.

The rule is that, while the plaintiff's negligence in being between the wagon and the street car track, so that the street car could not pass would defeat a recovery for antecedent negligence, yet he could recover, if defendant's servants, in charge of the street car became aware of his peril in time to avoid running over him by the proper use of preventative means at their command, and negligently failed to resort to such means to conserve his safety, provided plaintiff himself was free from negligence after becoming conscious of his danger. A. G. S. R. R. v. McWhorter, 156 Ala. 269, 47 South. 84; L. & N. R. R. v. Young, 153 Ala. 232, 45 South. 238, 16 L. R. A. (N. S.) 301; L. & N. R. R. v. Brown, 121 Ala. 227, 25 South. 609. The plaintiff cannot recover if his negligence is not only subsequent to, but concurrent with, the subsequent negligence of the defendant. In order, however, for him to be guilty of subsequent or concurrent negligence, he must have been conscious of his peril at that particular time. St. Louis R. R. v. Schumacher, 152 U. S. 77, 14 Sup. Ct. 479, 38 L. Ed. 361.

There is only one phase of the testimony under which, in our opinion, there was a tendency to indicate that appellant was guilty of subsequent negligence; but we are unwilling to import verity to this testimony, and that is the declaration of the appellee that the street car was running 35 miles an hour when it struck the automobile. This must be classed with the impossible, considered with his other statement, made at the trial, that "he [motorman] ran the platform of the street car beyond the rear end of my automobile," the statement in his letter to appellee which was introduced in evidence, that "he [motorman] attempted to stop the street car which he was unable to do until he had run the front end of it past the front end of my car," and the testimony of the appellee's witness, John Towers, that "it took four of us to pull the car back and pull it out from under the street car." It was uncontroverted in the testimony that the street car grazed the body of the automobile, and broke off the

door to the same, and crumpled up the fenders on the side next to the car, and that mashing it up against the wagon on the opposite side caused the same damage to the fenders on that side. So, in view of all this, and the distance within which the street car was stopped after coming in contact with the automobile, we simply cannot reach the conclusion that the street car was traveling at any such rate of speed at the time it came in contact with the automobile. The appellee's testimony was all that there was relative to the speed of the car at the time it struck the automobile, and he states it slowed up a little before it struck him.

After a most careful consideration of all the evidence in this case, we are of the opinion that the conclusion reached by the trial court is plainly contrary to the weight of the evidence, and that there was error in rendering a judgment for the plaintiff.

The judgment of the circuit court is therefore reversed, and the cause is remanded.

Reversed and remanded.