171 So. 742

## HARRISON v. MOBILE LIGHT & R. CO.

1 Div. 922.

Supreme Court of Alabama.

Dec. 17, 1936.

Rehearing Denied Jan. 21, 1937.

Harry T. Smith & Caffey, of Mobile, for appellant.

Smith & Johnston, of Mobile, for appellee.

**GARDNER, Justice.**

Plaintiff's intestate (her husband) on the night of March 13, 1934 (9 p. m. o'clock), was driving his automobile south on Broad street in the city of Mobile, and into Washington avenue, with which Broad street converges from the north, when there was a collision between his car and the street car of defendant company, which was proceeding north on Washington avenue, resulting in his death. Plaintiff was riding with her husband at the time, and her testimony as well as photographs of the automobile disclose that it was not a "head-on" collision in the true sense, for the reason that as her husband approached defendant's car, he swerved immediately to the right in evident effort to clear the tracks and avoid the collision, but was too close at the time, with the result that the left front side of his automobile received the impact, rather than its immediate front, coming in contact with the street car on its left front side, tearing loose a sign fastened thereon, and scattering much glass. The car track was embedded in the street and a part thereof.

While there was ample room on Washington avenue between the car track and the west curb for the passage of automobiles going south, plaintiff's theory of the necessity for driving onto the defendant's car track was the presence of a parked automobile on Washington avenue, which extended east towards the track to such an extent as to leave no sufficient room for the passage on the street of another automobile, and that defendant's motorman was guilty of both negligence as well as wantonness in failing to sound his gong and give

warning of the approaching street car, or to slacken the speed, which, it is insisted, was from twenty to twenty-five miles per hour, the same as that of the automobile.

It was defendant's theory that the street car was being operated in a prudent manner, going north on Washington avenue, at a speed of about ten miles an hour, when the motorman discovered, as he reached Pettus street, the automobile on the track running at an estimated speed of forty or forty-five miles an hour; that seeing a collision was imminent the motorman "jumped up and stepped off beside the operator's seat to get out of the way"; that this brought the car in "automatic emergency," and the car responded, coming to a stop as soon as the emergency took hold; that the car traveled about thirty feet from the time the motorman first saw it, stopping with the front end about twenty feet north of Pettus Street. The motorman insists that his car was therefore standing still when the collision occurred, and that the automobile, in the effort of the driver to get off the track, "glanced off," and went by the street car and in fact came to a stop on the track in its rear. Defendant's theory of the accident is better described by the following excerpt from the motorman's testimony: "An automobile came upon the track about Baltimore Street. The automobile was going fast. The automobile was directly at me. There was nothing between the driver of the automobile and me to keep him from seeing me or me from seeing him. He was on me immediately after I saw him coming into the street. I jumped to get out of the way, and stopped the car in emergency. There was not a thing in the world I could have done that I did not do to avoid that accident."

The motorman did not remember seeing any parked car at the place, did not sound the gong after he "saw the man," and does not remember when he sounded it before. The street was illuminated and the lights on the street car were burning. He had observed there was an automobile parked at that place several times, but had not noticed, and did not know, whether or not any car was parked there on this particular trip.

Washington avenue is a frequently used street, with which plaintiff and her husband were entirely familiar, but she testifies that at that hour of the night it was not frequently used, and that no other automobiles were parked on the west side of Washing-ton avenue save this one. Plaintiff offered her testimony in the recorder's court in which she stated there were no other cars on the street at that time.

Plaintiff insists the street car did not come to a stop immediately upon the collision, but continued a short distance, that the automobile's speed did not exceed twenty-five miles per hour, and that the street car could not be seen before reaching the drugstore at the corner of Baltimore and Broad streets, on account of the contour of the street and said drugstore building.

Defendant's evidence tended to show the street was visible north of Broad street a distance of 240 feet, but in any event was entirely visible the distance from the drugstore to north of Pettus street where the collision occurred—a distance, as appears from the map (Plaintiff's Exhibit 1), of about 150 feet. But this should, without further elaboration, suffice as a general outline of the case and of the theories upon which it was submitted to the jury.

The trial court submitted the issues. of negligence, wantonness, and contributory negligence pleaded by defendant for the jury's consideration, resulting in a verdict for defendant, and from the judgment following thereon plaintiff prosecutes this appeal.

Demurrers to counts 6 and 7 as amended were sustained, which rulings constitute the first assignment of error here argued.

The gravamen of count 6 is the alleged negligent failure of defendant to establish any rule or regulation requiring its motorman to give a signal or otherwise to instruct its motorman to give a signal. But the count does not allege that the motorman on this occasion negligently failed to give a signal. Assuming for the moment the right of plaintiff's intestate to place reliance upon a failure of defendant to give instructions to its motormen, the count is defective in failing to allege that the motorman on this occasion did in fact negligently fail to give any signal. By analogy the cases of Rush v. McDonnell, 214 Ala. 47, 106 So. 175, 177; Wise v. Schneider, 205 Ala. 537, 88 So. 662, 663; Sloss-Sheffield Steel & Iron Co. v. Bibb, 164 Ala. 62, 51 So. 345; First National Bank v. Chandler, 144 Ala. 286, 39 So. 822, 113 Am.St.Rep. 39, demonstrate the point. A reference to one or two of these authorities will suffice as an illustration.

In Wise v. Schneider, supra, the question related to liability of an intoxicated person

driving a car, and the holding was that the matter of intoxication alone did not suffice to fix liability, though by statute driving in such condition is made a misdemeanor. Said the court: "Such intoxication of itself furnishes no ground for liability if the driver has nevertheless exercised the care of a reasonably prudent driver. * * * But of course liability must in all cases be grounded upon its proximate causation of the injury complained of."

Likewise in Rush v. McDonnell, supra, where an automobile, with the father's consent, was driven by his minor son under sixteen years of age, and therefore incompetent, the court, after stating all other principles controlling the question of liability, concluded by adding "and injury to a third person resulting proximately from the incompetence of the bailee." And the opinion also quotes approvingly from Parker v. Wilson, 179 Ala. 361, 60 So. 150, 43 L.R.A. (N.S.) 87, the following: "In the case of a mere permissive use, the liability of the owner would rest, not alone upon the fact of ownership, but upon the combined negligence of the owner and the driver, negligence of the one in intrusting the machine to an incompetent driver, of the other in its operation."

The other cases noted equally serve as apt illustrations, but further reference we consider unnecessary.

But this matter of rules and regulations or instructions by the master to the servant were primarily for the protection and benefit of the servant. "One of the main purposes of a rule being to place servants in possession of certain information which they are not in position to acquire by their own unaided observation." 1 Labbatt on Master and Servant, § 212, as quoted in Woodward Iron Co. v. Lewis, 171 Ala. 233, 54 So. 566.

And in 3 Labbatt on Master and Servant (2d Ed.) § 1143, it is pointed out that the duty to instruct did not arise if the danger was either actually or constructively known to the servant—a principle recognized by this court in Richards v. Sloss-Sheffield Steel & Iron Co., 146 Ala. 254, 41 So. 288; Worthington & Co. v. Goforth, 124 Ala. 656, 661, 26 So. 531; Robinson Min. Co. v. Tolbert, 132 Ala. 462, 31 So. 519.

■ And, as to third persons, we think it settled by our decisions that the matter of liability is to be determined by the duty fixed by law, and is independent of any rule or regulation established by the master.

In Alabama G. S. R. Co. v. Clark, 136 Ala. 450, 34 So. 917, 920, plaintiff sought damages for the negligent destruction of his cotton by fire, and on the trial a rule of defendant company was offered in evidence. Its admission was held error to reverse, the court saying: "There existed no contractual relations between the plaintiff and the defendant, and the degree of care in the operation of the engine in order to prevent the destruction of plaintiff's property by the emission of sparks from the defendant's engine was that of an ordinarily prudent man. By this rule of law, and not by any rules of the defendant company regulating the conduct of its agents or employees in the operation of its engines, must the question of negligence be determined. By rules adopted for the government of its employees in the management of its internal business, the defendant company could not lessen the degree of care which the law requires, and it would be unreasonable to hold the defendant to a higher degree of care than the law imposes, because in its rules, in order to more thoroughly guard against accidents, it exacted an unusual or extraordinary degree of care of its employees. The rule of the company introduced in evidence over the objection of defendant, and which was made for the government of its employees, required the exercise of a greater degree of care than that of an ordinarily prudent man; it required the exercise of every precaution. This evidence was not without prejudice to the defendant, and its admission was error."

And properly interpreted, the later case of Birmingham Ry., L. & P. Co. v. Morris, 163 Ala. 190, 50 So. 198, 202, though differentiating on the matter of proof as to the two cases, nevertheless reaffirms the principle therein announced, as more clearly disclosed by the following excerpt from the opinion wherein reference was being made to Alabama G. S. R. Co. v. Clark, supra: "The decision took the admitted rule to require every precaution to prevent the destruction of property by fire; whereas the legal standard, as therein declared by the court, was such care as the ordinarily prudent man, likewise stationed, would exercise in the premises. The reasoning on which the holding was rested (and it is unassailable) was that the exaction of legal duty could not be raised to an uncontracting

plaintiff's advantage by a rule of the carrier requiring greater care than the law commanded. The standard of negligence, it was held, could not be altered—contracted or expanded—by a rule of the carrier under such circumstances."

In substance, the opinion in the Morris Case, supra, indorsed the previous holding in the Clark Case, supra, to the effect that "the standard of negligence * * * could not be altered—contracted or expanded—by a rule of the carrier under such circumstances."

■ In the instant case, plaintiff alleges in the counts there was no rule. But that fact does not alter the duty of the defendant to her intestate—a duty to operate its cars with reasonable prudence and care. If this duty was performed, then there was no liability regardless of any rule or the lack thereof. Clear enough, we think, no decisions in this state assert a contrary doctrine, including those cited in brief. Jordan v. Alabama City, G. & A. R. Co., 179 Ala. 291, 297, 60 So. 309; Anniston Electric & Gas Co. v. Rosen, 159 Ala. 195, 48 So. 798, 133 Am.St.Rep. 32; Birmingham Ry., L. & P. Co. v. Demmins, 3 Ala. App. 359, 375, 57 So. 404.

Many authorities from other jurisdictions cited in brief have been examined, among them Mitchell v. Boston & M. R. R., 68 N.H. 96, 34 A. 674; Dimmey v. West Virginia Traction & Electric Co., 83 W.Va. 755, 99 S.E. 93; Fenner v. Wilkes-Barre & W. Va. Traction Co., 202 Pa. 365, 51 A. 1034; Penas v. Chicago, M. & St. P. R.. Co., 112 Minn. 203, 127 N.W. 926, 30 L.R.A.(N.S.) 627, 140 Am.St.Rep. 470; but upon a careful reading of these decisions, we do not find they support the insistence of plaintiff that counts 6 and 7 properly stated a cause of action. To review them here would unduly extend this opinion and serve no useful purpose.

We are persuaded the ruling of the trial court was supported by our own authorities hereinabove noted, and by sound reasoning as well.

These observations are applicable to both counts 6 and 7, and further discussion of the counts separately is deemed unnecessary.

■ If any irregularity intervened as to the refiling of demurrer to count 6, as amended, it was waived (Pearce v. Kennedy, 232 Ala. 107, 166 So. 805); plaintiff joining in a consideration and argument thereof before the court, without giving any notice of any such irregularity, which was so readily capable of correction. We think it clear the parties in the court below elected to treat the demurrer as having been addressed to counts 6 and 7, separately and severally, and it will be so treated here. Milbra v. Sloss-Sheffield Steel & Iron Co., 182 Ala. 622, 62 So. 176, 46 L.R.A.(N.S.) 274; Walker v. Gunnels, 188 Ala. 206, 66 So. 45; Hall v. Kirkland, 225 Ala. 158, 142 So. 61. Plaintiff can therefore take nothing by these assignments of error.

■ Demurrers to pleas 12, 14, and 15 were overruled without error, as we conclude the following of our authorities demonstrate: Hambright v. Birmingham Ry., L. & P. Co., 201 Ala. 176, 77 So. 702; Birmingham Ry., L. & P. Co. v. Aetna Acc. & Liability Co., 184 Ala. 601, 607, 64 So. 44; Ross v. Brannon, 198 Ala. 124, 73 So. 439; Barbour v. Shebor, 177 Ala. 304, 58 So. 276; Jefferson Dairy Co. v. Thomas, 214 Ala. 305, 107 So. 449.

True, as to plea 12, detail information as to the hazard of the parked car therein referred to is not given, yet we think the plea sufficient without regard thereto, and reference thereto did not serve to constitute it a bad plea. Notwithstanding the rule of construction against the pleader, the plea is nevertheless to be given a reasonable and fair interpretation, Birmingham Ry., L. &. P. Co. v. Aetna Acc. & Liability Co., supra, and so considered, there was no error in the ruling thereon.

A brief discussion of the remaining assignments of error will suffice, but preparatory thereto it should be stated that we are not in accord with plaintiff's theory of the law as applicable to the facts here presented.

■ As to the automobile parked on the west side of Washington avenue, plaintiff argues that her intestate had the right to presume his passageway was unobstructed, and no duty rested upon him to keep a lookout therefor. In support of this argument plaintiff cited Montgomery Street Railway Co. v. Smith, 146 Ala. 316, 39 So. 757; Mayor and Aldermen of Birmingham v. Tayloe, 105 Ala. 170, 16 So. 576; but a reading of these authorities readily discloses they are inapplicable here. It is of course common knowledge that automobiles are parked on streets and highways, and such parking, in the absence of governmental prohibition or restriction, is lawful. 42 Corpus Juris, 1006.

Plaintiff and her husband were entirely familiar with these streets, and with the fact that cars were being parked on the west side of Washington avenue. She says: "My husband and myself were constantly using that place for travel every day, and we were going around the curve at a very moderate rate of speed. * * * I have traveled that street many times. * * * People were in the habit of parking automobiles on the west side of that street very frequently."

Notwithstanding this proof, the argument of plaintiff, as we understand it, is in effect that her intestate was under no duty to keep a lookout for any parked automobile, and had the right to assume none would be there to obstruct his passage, and that he was under no duty, to use the language of the brief writer, "to pay any attention whatever to the approaching street car, as long as he had the right to assume that his passageway on the west side of the street would not be obstructed, and that the approach of the street car would not, therefore, interfere with the safety of his automobile." We are not in accord with this theory of the case.

 Plaintiff's intestate was not only under a duty to keep a lookout for the parked automobile (Ivy v. Marx, 205 Ala. 60, 87 So. 813, 14 A.L.R. 1173; Barbour v. Shebor, 177 Ala. 304, 58 So. 276; Birmingham Ry. L. & P. Co. v. Williams, 158 Ala. 381, 48 So. 93), but also for the street car as he approached the track. Jaffe v. Birmingham Ry., L. & P. Co., 166 Ala. 572, 52 So. 311, 312. "On the traveler upon the street the duty rests to 'always * * * look for an approaching car, and, if the street is obstructed, to listen, and in some instances to stop. * * *'" Anniston Electric & Gas Co. v. Rosen, 159 Ala. 195, 48 So. 798, 801, 133 Am.St.Rep. 32. "The relative rights of travelers in public streets and street cars operated therein have been defined as being equal, not exclusive, in favor of or against either." Anniston Electric & Gas Co. v. Rosen, supra; Schneider v. Mobile L. & R. Co., 146 Ala. 344, 40 So. 761. "The object of such care and the precaution required being to conserve safety in a practical way, it must be observed, so as to subserve the purpose in view." Ross v. Brannon, 198 Ala. 124, 73 So. 439, 441. "One who walks upon a street railway track must first look to see whether a car is approaching on the track, and if his view of the track in one direction

is obstructed by a wagon, he must look from a point where, by looking, he can see the track in such direction." Jaffe v. Birmingham Ry., L. & P. Co., supra. "The presence of an obstruction to his view of the approaching street car would not acquit him of negligence. When the view is obstructed, other means must be resorted to in order to avoid a collision." Bradley v. Powers, 214 Ala. 122, 106 So. 799, 802.

"But it further appears without dispute that plaintiff did not look for an approaching street car. * * * This failure to look was negligence. It is negligence also to pass a 'blind corner' at such speed or in such manner that an automobile cannot be stopped after a street car can be seen approaching so near as to strike the automobile before it can cross the track. Due care demands that the automobile be under control at such a place." Mobile L. & R. Co. v. Gadik, 211 Ala. 582, 100 So. 837, 839.

And in Merrill v. Sheffield Co., 169 Ala. 242, 53 So. 219, there was approved charge 35, instructing the jury that it was as much the duty of the plaintiff driving along defendant's track to keep a lookout for the street car, as it was the duty of the motorman to keep a lookout for him.

In Ivy v. Marx, supra, upon the question of duty to keep a lookout, the holding was that the driver of an automobile and a motorman of a street car are under the same duty in that regard. As to the motorman in particular this duty has been variously described as "constant watchfulness" (Alabama Power Co. v. Pentecost, 210 Ala. 167, 97 So. 653; Sheffield Co. v. Harris, 183 Ala. 357, 363, 61 So. 88), "diligent" (Alabama City, G. & A. R. Co. v. Lumpkin, 195 Ala. 290, 70 So. 162), and "vigilant" (Mobile Light & R. Co. v. Nicholas, 232 Ala. 213, 167 So. 298).

And in Birmingham Ry., L. & P. Co. v. Williams, 158 Ala. 381, 48 So. 93, 95, are the following pertinent observations: "The duty of the company to recognize the rights of persons in the lawful use of the streets is imperative. As the company is held to a high degree of care, to a degree commensurate with the circumstances of each particular case, so likewise the citizen is held; for he cannot recklessly place himself in the way of danger and then complain of injury. He is bound, equally with the company, to the exercise of a proper degree of care, skill, and vigilance. He has no exclusive right to any particular portion of the street, and neither has the street rail-

way company. The car has the right of way, in case of meeting or overtaking a person on the track; but each party, in order to avoid accident, is bound to exercise ordinary care and such reasonable prudence and precaution as the attending circumstances may require. These circumstances necessarily vary in their relation to each other, in each particular case, and the conduct of the parties must be considered in the light of their surroundings at the particular time when they were called upon to act. What might be considered ordinary care in one case might, under the circumstances of another, amount to culpable negligence."

The opinion proceeds to demonstrate there is no fixed standard in law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent and what shall constitute ordinary care under any and all circumstances. These terms of ordinary care and reasonable prudence, as applied to this character of suit, have a relative significance, and cannot be arbitrarily defined.

"On these considerations it is manifest that the evidence of negligence in each case must depend upon the circumstances peculiar to it, and which surrounded the parties at the time of the occurrence on which the controversy is based. 'Where negligence does appear, there are generally some prominent facts which show a want of due regard for the safety of others, or an absence of proper care and precaution, so as to avoid the casualty, or incaution or lack of skill in the use of dangerous instrumentalities in places obviously perilous, or the doing of an act which duty had forbidden, or the omission to do one which duty had commanded to be done." Birmingham Ry., L. & P. Co. v. Williams, supra.

"A motorman may, within the limits of reasonable prudence and fair judgment, presume that an adult either will not enter the range of danger created by an approaching street car, or that he will remove himself or his vehicle therefrom before an impact occurs." Ross v. Brannon, 198 Ala. 124, 73 So. 439, 441.

■ Plaintiff also argues upon the theory that her intestate was guilty of no negligence in continuing at the same speed or accelerated speed so as to pass the parked automobile before the street car reached that particular place, and cites the case of Mobile L. & R. Co. v. McDonnell, 207 Ala.

161, 168, 92 So. 185. But we do not interpret anything said in that opinion as intended to overthrow the previous pronouncement of this court in Ross v. Brannon, supra, followed and applied by the Court of Appeals in Alabama Power Co. v. Bradley, 18 Ala. App. 533, 93 So. 73, 75, to the effect that: "Where a traveler at a public railway crossing, or on a street over which railways are operated, sees a train or street car approaching, misjudges its speed, or, for any reason, his own ability to cross before it reaches the point of his crossing thereof, and makes the attempt, and is injured thereby, he is guilty of contributory negligence, barring a recovery for his injury for any initial negligence of the operative of the train or street car, unless such operative is guilty of simple negligence or the more aggravated wrong, proximately causing the injury after discovery of the traveler's peril." And in that particular case (Ross v. Brannon, supra), the court further observed: "It is clear, beyond any sort of doubt, that the driver was guilty of contributory negligence, barring recovery for any initial negligence on the part of the operative of the street car, not only in attempting to 'beat' the street car over the crossing at the point toward which he was moving, but also in approaching Fifth avenue, over Thirty-Ninth street, at such speed as that he could not stop his automobile before it reached the railway or dangerous proximity to it after he saw or could with due diligence have seen the street car approaching."

As to the facts in the instant case, the proof was in dispute as to whether or not the street car was visible to plaintiff's intestate as he drove down Broad street to Baltimore street, where it merges into Washington avenue. But, however that may be, we do not understand it is controverted that both the approaching street car and the parked automobile were visible when the automobile of plaintiff's intestate reached the drugstore on the corner of Baltimore and Broad streets, and as it proceeded down Washington avenue. We so read plaintiff's testimony, and her map likewise so discloses.

We further understand the proof to show, without contradiction, that the parked automobile was approximately 123 feet from the point of the corner, and that the collision took place just beyond the parked car, approximately 150 feet from this (drugstore) corner. Measurements on

plaintiff's map appear to confirm this conclusion.

Plaintiff further testifies that at this hour of the night (9 p. m.) there was very little traffic, and the reasonable inference from the record is that no other cars were at this place on that occasion. Indeed, plaintiff's testimony in the recorder's court, offered by plaintiff on the trial, after referring to automobiles, has the statement, "and there was not any more cars going at that time," which we think clearly had reference to street traffic. Plaintiff further testifies that the only parked automobile was the one on the west side of Washington avenue, around which her husband ran his car when the collision occurred. She noticed a street car coming "just as we passed and turned that curve, and there was an automobile parked, and Mr. Harrison was turning off the track. He had gotten around the parked car and just as he passed the parked car and was on the street car track. * * * When I first noticed the street car coming, our automobile was just below Albright & Wood's (we interpolate—the drugstore) right as we got close to that store next to Albright & Wood's I noticed the street car coming then. Just as my husband was turning off the track, I said 'My God the street car is going to hit us.' He was then turning off the track. We had just passed the parked automobile. We had gotten around it before he started turning off to the right. I do not know exactly where, and it hit us so quick I did not know nothing." At another place, however, plaintiff testifies she "did not see the street car until we were right upon it. The headlight of the street car was burning. My husband had good eye sight, but we were not looking down the street. I was not looking straight down the street at first when we passed Albright & Wood's. I think I was looking around on the sidewalk. I do not know where my husband was looking at the time." And at another point she says she saw the street car just before they got to the parked automobile, "and we went to pull off to the side and went around that parked car, and as he turned off the track was when the street car crashed * * *. We never saw the street car until we came around Albright & Wood's. I never saw it until I got back of Albright & Wood's drugstore. When we got there we saw the street car. I was not looking for the street car. I was looking in Albright & Wood's store. Looking on the sidewalk."

The motorman was operating his car traveling north, plaintiff's intestate going south, and on defendant's track at the time of the collision. The street was illuminated and the headlight on the street car was burning brightly. The motorman's vision was not obscured. He testifies he did not recall seeing any parked automobile on the west side of Washington avenue, and that upon discovery of the automobile upon the track immediately ahead of his car, approaching at a high speed, he did all that could be done.

Reverting to the assignments of error, and first to those involving charges given for defendant and refused to plaintiff. The given charges are of course to be considered in the light of the facts presented and the principles of law hereinabove noted and approved. So considered, we think at most some of them may be said to be somewhat misleading, but, if so, only to such extent as called upon plaintiff to request an explanatory charge (Birmingham Railway, Light & Power Co. v. Friedman, 187 Ala. 562, 65 So. 939), and we are of the opinion none of them did in fact mislead.

Charges 10 and 11 refused to plaintiff run counter to the principles of law above stated, and were properly refused.

Other charges refused to plaintiff were either subject to criticism or covered by charges given for plaintiff.

There was no answer to the question, the basis of the fourteenth assignment of error, and that of the fifteenth was answered in the negative.

As to the sixteenth assignment of error, the question was on cross-examination of plaintiff, whose testimony tended to show her husband, the intestate, was driving at a moderate speed, and upon such examination the trial court exercised much discretion as to its latitude. The most that can be said is that defendant elicited from the witness an admission that she had previously sued her husband charging negligent driving of a car. But this proof was subsequently withdrawn by defendant, and if there was any error in the first instance, we are not prepared to hold it was not cured by this action. At any rate, upon a consideration of the entire cause, we are of the opinion this matter was not of such prejudicial character as to justify a reversal of the cause.

Assignments of error 17 to 21 relate to the introduction of two maps of

404

the location offered by defendant. We are inclined to the view defendant had sufficiently shown the status of the location by its witness who had made measurements, and compared with the map and shown its connection. But in any event, admittedly, these maps were substantially the same as offered by plaintiff, with the exception of the location of the street car, and as to this latter fact defendant offered proof to show in what manner the street car was located, that is, the piles of sand and glass. Strict mathematical accuracy is not required (22 Corpus Juris, 912), and any person acquainted with the facts may testify to the correctness of the map, and much is left to the discretion of the court. 22 Corpus Juris, 912, 913. We think sufficient proof as to the correctness of these maps was offered, and there was no error in their admission. Wilson Bros. v. Mobile & Ohio Railroad Co., 207 Ala. 171, 92 So. 246.

The ruling on cross-examination of the witness Sawyer (assignment 22) so clearly presents no reversible error as not to require discussion, and like observation is applicable to assignment of error 33.

We consider that we have sufficiently discussed the meritorious questions here presented, and find no error to reverse.

The judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.